Willie McLAURIN et al., Plaintiffs-Appellants,

v.

The COLUMBIA MUNICIPAL SEPARATE SCHOOL DISTRICT et al., Defendants-Appellees.

No. 71-3022.

United States Court of Appeals, Fifth Circuit.

April 11, 1973.

Rehearing and Rehearing En Banc Granted May 24, 1973.

Nausead Stewart, Fred L. Banks, Jr., Melvyn R. Leventhal, Jackson, Miss., for plaintiffs-appellants.

Maurice Dantin, Columbia, Miss., for defendants-appellees.

Before GOLDBERG, DYER and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

This Court's en banc decision in Singleton v. Jackson Municipal Separate School District, 1970, 419 F.2d 1211, cert. denied, 1970, 396 U.S. 1032, 90 S. Ct. 612, 24 L.Ed.2d 530, prescribed detailed procedures for the effectuation of staff reductions resulting from the judicially-ordered desegregation of formerly dual public educational systems:

> "If there is to be a reduction in the number of principals, teachers, teacher-aides, or other professional staff employed by the school district which will result in a dismissal or demotion of any such staff members, the staff member to be dismissed or demoted must be selected on the basis of objective and reasonable non-discriminatory standards from among all the staff of the school district. In addition if there is any such dismissal or demotion, no staff vacancy may be filled through recruitment of a person of a race, color, or national origin different from that of the individual dismissed or demoted, until each displaced staff member who is qualified has had an opportunity to fill the vacancy and has failed to accept an offer to do so.

> Prior to such a reduction, the school board will develop or require the development of nonracial objective criteria to be used in selecting the staff member who is to be dismissed or demoted. These criteria shall be available for public inspection and shall be retained by the school district. The school district also shall record and preserve the evaluation of staff members under the criteria. Such evaluation shall be made available upon request to the dismissed or demoted employee.

> "Demotion" as used above includes any reassignment (1) under which the

staff member receives less pay or has less responsibility than under the assignment he held previously, (2) which requires a lesser degree of skill than did the assignment he held previously, or (3) under which the staff member is asked to teach a subject or grade other than one for which he is certified or for which he has had substantial experience within a reasonably current period. In general and depending upon the subject matter involved, five years is such a reasonable period." 419 F.2d at 1218.

The district court ruled that the failure of the Columbia, Mississippi, Municipal Separate School District to renew the teaching contracts of five black staff members for the 1970–1971 academic year was not required to be evaluated pursuant to the *Singleton* procedures governing staff reductions. Accordingly, he rejected the claims for reinstatement lodged by four of the five teachers and dismissed all claims for awards of back pay. We believe that the district judge misconstrued the scope of our *Singleton* decision as applied to the facts of this case and therefore reverse the judgment rendered below with directions to grant the relief requested.

## THE DESEGREGATION LITIGATION

Desegregation of the Columbia Municipal Separate School District was accomplished by means of a lawsuit instituted by the United States. That action was consolidated with 24 other Mississippi school desegregation cases in the Hinds County School Board litigation which received concentrated attention from this Court in 1969.

In United States v. Hinds County School Board, 5 Cir., July 3, 1969, 417 F.2d 852, cert. denied, 1970, 396 U.S. 1032, 90 S.Ct. 612, 24 L.Ed.2d 531, we held that freedom-of-choice public school desegregation plans were no longer constitutionally adequate. We directed the defendant school districts to implement workable desegregation plans by the start of the 1969–1970 school year. On August 28, 1969, upon the motion of the United States Department of Justice and the recommendation of the Secretary of Health, Education and Welfare, we suspended the July 3, 1969, order and postponed the date for the submission of new plans until December 1, 1969.

On October 29, 1969, sub nomine Alexander v. Holmes County Board of Education, 396 U.S. 19, 90 S.Ct. 29, 24 L.Ed. 2d 19, the Supreme Court held that we had erred in delaying the implementation of our July 3, 1969 order. The Supreme Court vacated our order of August 28, 1969, and directed that the defendant school districts were to operate unitary educational systems effective immediately.

This Court, on November 7, 1969, directed the defendant school districts to implement permanent desegregation plans devised by the Office of Education, Department of Health, Education, and Welfare, no later than December 31, 1969. United States v. Hinds County School Board, 5 Cir., 1969, 423 F.2d 1264, cert. denied, 1970, 396 U.S. 1032, 90 S.Ct. 612, 24 L.Ed.2d 531.

## COMPLIANCE ON THE PART OF THE COLUMBIA DISTRICT

The Columbia Municipal Separate School District responded to our November 7, 1969, order by moving classes, with their teachers, intact from one building to another for the second semester of the 1969–1970 school year. As a result, black teachers in the employ of the District continued to instruct their all-black classes and white teachers continued to instruct their all-white classes. The only difference was that the school buildings were no longer racially segregated. The situation lasted until the end of the 1969–70 academic year. A true merger of the faculties and student bodies was not effectuated until the start of the 1970–1971 school year.

## THE REDUCTION IN THE INSTRUCTIONAL STAFF

On March 26, 1970, the five plaintiffs in this action W. S. McLaurin, Mrs. Al-

berta Collins, Shirley Johnson, Mrs. Rose Johnson, and Joe Reddix, all instructional personnel in the school system, were given notice that their contracts would not be renewed for the 1970–1971 school year. The notices failed to state specific reasons for the non-renewals and requests for explanations proved unavailing.

During the 1969–1970 school year, the Columbia Municipal Separate School District employed 129 teachers; that figure was reduced to 116 teachers for the following year.[1] For the 1970–1971 academic year, the District employed twelve new teachers, all but one of them white. None of the five plaintiffs was offered an opportunity to fill any of the apparent vacancies. It is undisputed that at the time the plaintiffs were notified that their contracts were not to be renewed, no objective criteria for the selection of teachers to be demoted or dismissed had been adopted by the District. In addition, no systematic comparisons of the five plaintiffs with the District's other faculty members were made prior to the non-renewals of the contracts and the District's evaluations of the plaintiffs were formulated only after suit was brought in the district court.

## PROCEEDINGS IN THE DISTRICT COURT

On August 4, 1970, the plaintiffs filed their complaint in the district court and alleged jurisdiction under the First, Thirteenth, and Fourteenth Amendments to the United States Constitution; Title VI of the Civil Rights Act of 1964, Sec. 601, 42 U.S.C. Sec. 2000d; and 42 U.S.C. Secs. 1981 and 1983. They sought temporary and permanent injunctive relief in the form of teaching contracts for the 1970–1971 school year, back pay awards, and counsel and litigation costs and fees. The complaint [2] alleged the following *Singleton* violations:

"Upon information and belief defendants have violated the above cited order: (1) plaintiffs and members of the plaintiff class are as qualified or more qualified than many of the white teachers who have obtained contracts for the 1970–1971 school year; (2) defendants have failed and refused to consider the qualifications of all teachers in the defendant school districts as a basis for determining which teachers were to be dismissed prior to the dismissal of plaintiffs and members of the plaintiff class; (3) defendants will hire and have hired white teachers with qualifications and experience equivalent to or inferior to that possessed by plaintiffs and members of the plaintiff class; (4) defendants have recruited and employed teachers new to the system for alleged vacancies without first considering the qualifications of plaintiffs and members of the plaintiff class; (5) defendants have failed to develop objective criteria to be used in selecting staff members to be dismissed or demoted."

The Columbia Municipal Separate School District answered by denying that it had committed the *Singleton* violations enumerated in the complaint. After extensive discovery was had, a two day trial before the district judge began on July 15, 1971. In an opinion dated August 24, 1971, the trial judge found against the plaintiffs (with the exception of Mrs. Rose Johnson, whose non-renewal was directed to be reconsidered on the basis that she had been evaluated for her performance at a grade level other than

1. The record contains some disparities as to the number of teaching positions reduced, but App. 312 indicates a stipulation was reached that between school years the number of black teachers decreased by ten and the number of white teachers by three, a total of thirteen. This is the figure we use in the text, 129 reduced to 116, although other calculations may show a different total number for each year.

2. The complaint also named the Marion County Board of Education as a defendant. A settlement was reached in the Marion County matter as a result of which only the actions of the Columbia Municipal Separate School District are now before us.

the one for which she was certified) for the following reasons:

1. The *Singleton* criteria were not applicable to this case, thereby rendering non-compliance with those criteria irrelevant.

2. Each plaintiff (except for Mrs. Johnson) was dismissed for legitimate cause based upon his or her performance while employed by the District.

3. None of the five plaintiffs was entitled to awards of back pay because they had permitted their suit to remain dormant until well into the second semester of the 1970–1971 school year.

## THE APPLICABILITY OF THE SINGLETON CRITERIA

The district court addressed itself to the applicability of the *Singleton* standards as follows:

"One of the plaintiffs' allegations is that the board, in the implementation of its desegregation plan, failed to adopt objective nonracial criteria in the 'dismissal or demotion' of any staff member, and to make these criteria available for public inspection and evaluations made thereunder available to any dismissed or demoted employee. The Court finds this partially true in that within the two months' time this board had to implement its plan prior to the time teacher recommendations were statutorily required, it had not made such criteria public. This is not to say that such criteria were not considered by the board with regard to plaintiffs herein. Moreover, the Court finds that objective nonracial criteria have been developed and adopted by the board since the filing of the suit. Further full and complete evaluations of plaintiffs' teaching performances were furnished plaintiffs in defendants' answers to interrogatories, months prior to the trial.

The board's position with regard to plaintiffs is that they were not dismissed due to a 'reduction' in teaching staff to which the HEW provisions are applicable. Following integration in January 1970, only 1 teaching station was lost to the system. No reduction in staff was necessary, attrition having taken care of any reduction due to loss of enrollment. Eight faculty members were not rehired, including the black assistant principal and four teachers, plaintiffs herein. These faculty members were not re-hired for cause . . . ."

We believe that the district judge erred in holding the *Singleton* criteria inapplicable for two reasons: (1) full compliance with the desegregation directives of this Court was not achieved until the start of the 1970–1971 school year, when classes were first conducted on an integrated basis; and (2) there was in fact a reduction in the number of teaching personnel of the District between the 1969–1970 school year and the 1970–1971 school year.

Once it is determined that the *Singleton* standards were applicable to the non-renewals of these five plaintiffs, it is clear that those standards were violated when the District decided not to renew the plaintiffs' contracts for the 1970–1971 school year. No objective criteria had been promulgated prior to the decisions not to renew; the displaced black faculty members were not given first consideration for subsequent vacancies on the District's staff; and the evaluations of the plaintiffs' performances were not made until long after their employment relationships had been terminated.

## DISMISSALS FOR CAUSE

Before summarizing the evidence adduced at trial dealing with the alleged deficiencies in the performances of the plaintiffs, the district court observed:

"The State of Mississippi has no tenure for its public school teachers. By statute, the principal of each school recommends to the superintendent on or before April 1st of each year those teachers to be employed for the school involved. If such recommendations meet with the approval of the superin-

tendent, the statute then provides that he shall recommend the employment of such teachers to the board of trustees of the district, and, unless good reason to the contrary exists, the board of trustees shall elect the teachers so recommended. There are no statutes providing for notice or hearing procedures for teachers not recommended for re-employment . . . "

Having concluded that the plaintiffs were without tenure or the right to notice or hearing procedures prior to the non-renewals of their employment contracts, the trial court found that each non-renewal was based upon valid grounds (with the exception of Mrs. Johnson, supra).

In Sparks v. Griffin, 5 Cir., 1972, 460 F.2d 433, we held that a Texas school district had unconstitutionally refused to renew the employment contracts of two black teachers while the process of disestablishment of the dual educational system was taking place. We there stated:

"The district court ruled that neither plaintiff-appellant had any legitimate expectancy of continued employment by the Union Hill Independent School District because neither one had tenure and it had long been the custom to reconsider the contract of every teacher in the district on an annual basis. While the expectancy of continued employment has been an important issue in several decisions of this Court dealing with public educational institutions, see, e. g. Sinderman v. Perry, 5 Cir., 1970, 430 F.2d 939, cert. granted, 1971, 403 U.S. 917, 91 S.Ct. 2226, 29 L.Ed.2d 694 (alleged refusal to renew teaching contract because of teacher's exercise of First Amendment rights), we have never recognized the relevancy of this concept to school desegregation proceedings. The plaintiffs-appellants in this case, both blacks, have charged that their contracts were not renewed for the 1968–1969 academic year for racially discriminatory reasons. The mere fact that they were not offered new contracts for the following year rather than being dismissed outright does not limit their right to seek relief under the controlling decisions of this Court." 460 F.2d at 442.

We are not at all persuaded that each plaintiff was denied employment for the 1970–1971 academic year for valid, objective, nonracial reasons. As the district court noted, " . . . all plaintiffs had numerous years of teaching experience, at least four years in the Columbia schools, except Rose Johnson who had only one year, but had five years' teaching experience elsewhere." It is difficult to believe that the District's level of tolerance of the plaintiffs' alleged deficiencies in the performance of their duties was coincidentally reached and exceeded during the period meaningful desegregation was being achieved. Guided by *Singleton* standards, we conclude that the district court's finding that all the plaintiffs were dismissed for valid cause is clearly erroneous, Rule 52(a), Federal Rules of Civil Procedure, and not binding on this Court.

### THE PROPRIETY OF BACK PAY AWARDS

Because we have decided that the plaintiffs were improperly denied re-employment by the Columbia Municipal Separate School District for the 1970–1971 academic year, we must now inquire into their eligibility for awards of back pay. As noted earlier, the district court ruled that the plaintiffs were not entitled to awards of back pay because they had permitted their suit to remain dormant well into the second semester of the 1970–1971 school year. The following chronology is taken verbatim from the district court's opinion in this case:

"The complaint and motion for preliminary injunction was filed on August 4, 1970, nearly six months after plaintiffs were terminated. On August 26, 1970, defendants promptly filed answers and a motion for severance as to the separate school boards. On September 1, 1970, plaintiffs propounded interrogatories to de-

fendants requiring voluminous answers which were promptly filed on September 21, 1970. On February 17, 1971, present counsel for plaintiffs entered an appearance and on the same date filed a motion for an early hearing noticing same for a time to be designated by the Court, but with no notice being given to the Court. On March 4, 1971, plaintiffs' counsel for the first time notified the Court of the pending action and motions. On March 26, 1971, the Court acknowledged counsel's letter advising that after holding court in Hattiesburg during the middle two weeks of March, the Court, for the first time, had an opportunity to review the pleadings. In the same letter, the Court advised counsel that it was denying the motion for preliminary injunction for relief as to the 1970–1971 school year as moot, but would hear all other pending motions on April 5, 1971, including the Court's own motion to dismiss for lack of prosecution.

On April 5, 1971, at a hearing in chambers, the Court approved defendants' motion for severance and reaffirmed its position that plaintiffs' motion for preliminary relief for the 1970–1971 school year had become moot. An order to this effect was entered on April 29, 1971.

Following unsuccessful conferences between counsel for both sides to agree on a pre-trial order pertaining to those plaintiffs not offered reemployment by the Columbia Municipal Separate School District, a two day trial on the merits was held, beginning July 15, 1971. As to that portion of the case, pertaining to the Marion County Board of Education, it has been settled and is not before the Court."

■ We hold that awards of back pay should have been made by the district court. The sequence of events related in the district court's opinion does not reveal such an inordinate delay in the prosecution of this case as to justify denial of back pay. As the district court noted, the responses to interrogatories were "voluminous". In addition, the Columbia Municipal Separate School District did not help to expedite matters by its denial of any *Singleton* violations. Finally, as we noted in Harkless v. Sweeny Independent School District, 5 Cir., 1970, 427 F.2d 319, back pay awards are closely related to grants of injunctive relief in matters pertaining to the desegregation of public schools:

> "Section 1983 was designed to provide a comprehensive remedy for the deprivation of federal constitutional and statutory rights. The prayer for back pay is not a claim for damages, but is an integral part of the equitable remedy of injunctive reinstatement. Reinstatement involves a return of the plaintiffs to the positions they held before the alleged unconstitutional failure to renew their contracts. An inextricable part of the restoration to prior status is the payment of back wages properly owing to the plaintiffs, diminished by their earnings, if any, in the interim. Back pay is merely an element of the equitable remedy of reinstatement." 427 F. 2d at 324.

## PLAINTIFFS' ENTITLEMENT TO COUNSEL FEES

The plaintiffs have moved this Court for an award of reasonable attorney's fees to be taxed as costs against the Columbia Municipal Separate School District.

The leading decision in the area of attorney's fee awards pertaining to public school desegregation actions is the Fourth Circuit's en banc ruling in Bradley v. School Board of the City of Richmond, Virginia, 4 Cir., 1965, 345 F.2d 310, wherein it was stated:

> "Finally, the attorneys for the appellants ask an award of attorneys' fees. They asked for such fees in the District Court and were awarded a nominal fee because of their representa-

tion of the two additional plaintiffs whose entry into the school of their choice was ordered by the District Judge, despite the fact that their applications were belated. While the District Court's order was otherwise generally unfavorable to the plaintiffs, and we affirm it here, the plaintiffs' attorneys say that as a result of their efforts in the first trial the plaintiffs obtained very substantial relief. It is true that the original plaintiffs did obtain substantial relief in the District Court in the first trial, and it is true also that we directed an award of attorneys' fees in Bell v. School Board of Powhatan County, 4 Cir., 321 F.2d 494.

It is only in the extraordinary case that such an award of attorneys' fees is requisite. In school cases throughout the country, plaintiffs have been obtaining very substantial relief, but the only case in which an appellate court has directed an award of attorneys' fees is the Bell case in this Circuit. Such an award is not commanded by the fact that substantial relief is obtained. Attorneys' fees are appropriate only when it is found that the bringing of an action should have been unnecessary and was compelled by the school board's unreasonable, obdurate obstinacy . . ." 345 F. 2d 321.

See, also, Monroe v. Board of Commissioners of City of Jackson, Tennessee, 6 Cir., 1972, 453 F.2d 259, 263 where the district court's award of attorneys' fees to prevailing plaintiffs in a school desegregation proceeding was upheld on appeal.

The Fourth Circuit has recently relaxed its test for assessing the propriety of an award of attorneys' fees in school desegregation matters. In Brewer v. Norfolk School Board, 4 Cir., 1972 (en banc), 456 F.2d 943, cert. denied, 1972, 406 U.S. 933, 92 S.Ct. 1778, 32 L.Ed.2d

136, it was held that parents who secured the right of free bus transportation for students assigned to public schools far from their homes were entitled to an allowance for attorneys' fees under a quasi-application of the "common fund" doctrine.

This Court has recognized that an award of attorneys' fees in favor of prevailing plaintiffs in a school desegregation proceeding may be appropriate. In Horton v. Lawrence County Board of Education, 5 Cir., 1971, 449 F.2d 793, we stated:

"It is settled law in this circuit that federal district courts may, at their discretion, award attorneys' fees in civil rights litigation where the actions of the defendants were 'unreasonable and obdurately obstinate.' Lee v. Southern Home Sites Corporation, 5 Cir., 1970, 429 F.2d 290; Williams v. Kimbrough, 5 Cir., 1969, 415 F.2d 874. Nevertheless, as appellants conceded on oral argument before this court, the district judge in the case at bar has never ruled on their demand for attorneys' fees. Since this court is not empowered to make an initial adjudication of such a claim, we remand this issue to the district court for its determination without even the slightest intimation as to whether the Board did or did not engage in such conduct as would merit an award of reasonable attorneys' fees to appellants." 449 F.2d at 794.

We believe that in this case it is appropriate to follow the course of action taken in *Horton*. The district court should make the initial determination as to whether to compel the District to underwrite the plaintiffs' attorneys' fees under either of the theories discussed above. Either party will be able to seek review in this Court of the district court's disposition of the claim for attorneys' fees.

## CONCLUSION

The judgment of the district court is reversed and the cause is remanded with directions to require the defendant Columbia Municipal Separate School District to offer employment contracts to the appellants effectively reinstating them in the positions which they occupied prior to their dismissals at the end of the 1969–1970 school year or equivalent positions. In addition, the district court is directed to enter judgment in favor of each of the plaintiffs for back pay in the amount of compensation lost by each plaintiff as a result of the District's unlawful refusal to renew their contracts for the 1970–1971 school year, less the amounts which each has earned, if any, during the interim period. Finally, the district court is directed to conduct further proceedings and to make findings of fact and conclusions of law concerning the right of the plaintiffs in this action to an award of attorneys' fees for services rendered to them in this Court and in the district court.

Reversed and remanded.

DYER, Circuit Judge (dissenting):

The trial court's determination that the *Singleton* principle is inapplicable to this case is the only contested issue in this appeal. In *Singleton,* we held that the Equal Protection and Due Process Clauses of the Fourteenth Amendment required that if there was to be an absolute reduction in the number of principals, teachers, or professional staff employed by a school district as a result of court-ordered desegregation consolidation, then the staff member or teacher to be dismissed or demoted as a result must be selected on the basis of a comparative evaluation of all the employees of the district at the same level on the basis of objective and reasonable nondiscriminatory standards to be developed and promulgated by the Board prior to the evaluation. Singleton v. Jackson Municipal Separate School District, 5 Cir. 1969, 419 F.2d 1211, 1218 (en banc), cert. denied, 396 U.S. 1032, 90 S.Ct. 612, 24 L.Ed.2d 530.

*Singleton* is inapplicable because the court-spawned faculty reduction at the heart of that case is not present here. While there was reduction in number of six teacher stations in the school system between the 1969–70 and 1970–71 school terms, it is perfectly clear that the reduction cannot be traced to court-ordered school consolidation in furtherance of desegregation. At the time the Board failed to renew appellants' contracts there had been no instructions or suggestions to the principals or superintendent to reduce the size of the faculty. Furthermore, it is undisputed that new personnel had to be employed for the 1970–71 term in the fields of those not rehired and thus there was no need for reduction by discharge. In short, I must conclude, as did the trial court, that the non-renewal of appellants' contracts was not required because of a decrease in enrollment or reduction in personnel.

With *Singleton* inapplicable, nothing exists here to condition the discretionary right of local school authorities in Mississippi to supervise the conduct of their teachers and refuse to renew their contracts. The trial court found and the record is replete with illustrations of unfitness to teach and professional incompetency which the Trustees relied upon in making their evaluations. Under section 6282–26 of the Mississippi Code of 1942, as amended, the superintendents of county and municipal school districts in the state are authorized to remove or suspend teachers, upon proper notice and hearing, for incompetence, neglect of duty, immoral conduct, intemperance, brutal treatment, or other reasons determined to be good cause.

As did the district court, I find substantial evidence that the conduct of these teacher-appellants created disciplinary problems and discord among their fellow teachers, reflected in some instances intemperance, indicated fiscal irresponsibility with respect to public funds, and disrupted the orderly admin-

istration of the school system. Under these circumstances the district court's finding of good cause for the dismissals was not clearly erroneous. *See* Jennings v. Meridian Municipal Separate School District, 5 Cir. 1971, 453 F.2d 413; Moore v. Winfield City Board of Education, 5 Cir., 1971, 452 F.2d 726.

Assuming arguendo that *Singleton* is applicable I would have to disagree with the majority that appellants Johnson and Reddix are entitled to relief.

It is not suggested, nor could it be, that the district court's findings that Johnson, who was teaching driver education, had an alcohol problem, and that Reddix, an instructor for educable mentally retarded children, struck a girl across the hand with a board with such force that it drew blood, are clearly erroneous.

In my view, no pre-established objective criteria were necessary to justify the non-renewal of these two teachers. *See* Thompson v. Madison County Board of Education, 5 Cir., 1973, 476 F.2d 676.

I respectfully dissent.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

Before JOHN R. BROWN, Chief Judge, and WISDOM, GEWIN, BELL, THORNBERRY, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, DYER, SIMPSON, MORGAN, CLARK, INGRAHAM and RONEY, Circuit Judges.

BY THE COURT:

A member of the Court in active service having requested a poll on the application for rehearing en banc and a majority of the judges in active service having voted in favor of granting a rehearing en banc,

It is ordered that the cause shall be reheard by the Court en banc with oral argument on a date hereafter to be fixed. The Clerk will specify a briefing schedule for the filing of supplemental briefs.