George PICKENS et al., Plaintiffs,

v.

OKOLONA MUNICIPAL SEPARATE
SCHOOL DISTRICT et al.,
Defendants.

No. EC 69–56–K.

United States District Court,
N. D. Mississippi, E. D.

Aug. 28, 1974.

Lewis Myers, Jr., Oxford, Miss., for plaintiffs.

Kenneth Coleman, Okolona, Miss., for defendants.

## MEMORANDUM OPINION

KEADY, Chief Judge.

In this case, plaintiffs, black patrons of the Okolona Municipal Separate School District (School District), who in 1969 instituted the original desegregation suit involving the Okolona public schools, presently seek reinstatement and back pay for Lagrone Pack, a black teacher formerly employed at Okolona High School, and other equitable relief. Defendants are the superintendent and trustees of the School District, who interpose no objection to the issues being raised in the present proceeding, which was begun in 1973 as a motion in the original school case rather than being filed as an independent action.

Plaintiffs assert that Pack was relieved of employment at the end of the 1972–73 school year in violation of Singleton v. Jackson Municipal Separate School District, 419 F.2d 1211 (5 Cir. 1970). He alleges that he was dismissed impermissibly, by the use of an evaluation process adopted by the school officials which lacked objective standards to validly measure his ability as a teacher.[1] Defendants deny *Singleton's* applicability to the instant case; they aver that Park was not rehired because of gross deficiencies and shortcomings as a classroom teacher and that the failure to recommend him for continued employment was wholly unrelated to racial considerations.

The court has afforded to the parties a full evidentiary hearing, receiving not only the transcript of evidence offered before the school board but also testimony of lay witnesses and educational experts offered by both sides. Briefs by counsel having been submitted, the court proceeds to a determination of the merits, incorporating herein findings of fact and conclusions of law as required by Rule 52, F.R.Civ.P. Many basic facts are stipulated or are not seriously dis-

---

1. Plaintiffs initially alleged that three other teachers were also illegally discharged at the end of the 1972–73 school year. Following a status conference with the court on May 23, 1973, one dismissed teacher was rehired and the others, who were provided a hearing before the school board, are no longer in contest.

puted; certain conflicts in testimony will be resolved by the findings made herein.

Lagrone Pack, a lifelong resident of Okolona, holds a Bachelor's degree from Stillman College, a Master's from Mississippi State University in the field of political science, and also AA State certification as a high school classroom teacher. He was first employed by the Okolona schools in 1966 at the Fannie Carter (formerly black) School, teaching 9th and 12th grade classes in government and civics. For seven years he remained so employed, teaching the same grade levels, until he was not rehired at the close of the 1972–73 school year. In the intervening period of time, however, this court by an order entered in this cause on January 1, 1970, directed massive desegregation of the district's schools effective February 9, 1970, and from that time forward, Fannie Carter School, renamed Okolona High School, was the only attendance center for high school students.

James Anderson, high school principal (white), on April 17, 1973, informed Pack that he would not recommend him for continued employment; this was immediately confirmed in writing by Superintendent Starkey Morgan. Pack claims that no reasons were immediately given for his non-rehire, although Anderson maintains that he told Pack in no uncertain terms that he had not been recommended because of his poor classroom performance. On April 26, the superintendent advised Pack by letter that he might request a hearing before the school board, and if such was desired Pack should contact the superintendent to arrange for such meeting. Pack engaged counsel who, instead of seeking a meeting before the board, filed the present proceeding in federal court. After an initial court hearing (see Fn. 1), a meeting was arranged before the school board on August 2. At that time Pack and his attorney appeared before the board, which heard testimony from Anderson, Robert T. Baker, Jr., the school's band director, as well as from Pack and one of his students. By unanimous vote, the school board upheld the action not to rehire Pack for the 1973–74 school year.[2]

Before addressing the specific issues raised by the present controversy, the court sets forth additional background facts. When desegregation was first ordered in 1970 for Okolona schools and at all times since, the School District has had a majority black enrollment, 58% black and 42% white. In the ensuing years, the number of students, by race, has varied up and down to only a minor degree.[3] During this 4-year period, the number of full-time teachers fluctuated slightly, except that the size of the high school faculty increased by nearly one-third. The number of black teachers at all schools remained almost the same.[4]

2. The school board is composed of five persons, one black and four white.

3. Annual reports to the court disclose enrollment as follows:

| Year | Total Students | Black | White |
|------|----------------|-------|-------|
| 1970–71 | 1432 | 817 | 615 |
| 1971–72 | 1465 | 802 | 663 |
| 1972–73 | 1497 | 848 | 649 |
| 1973–74 | 1357 | 767 | 590 |

| 4. | Full-time | | | High School Faculty | |
|------|-----------|-------|-------|-------|-------|
| Year | Teachers | Black | White | Black | White |
| 1970–71 | 72 | 32 | 40 | 18 | 17 |
| 1971–72 | 73 | 34 | 39 | 17 | 19 |
| 1972–73 | 69 | 30 | 39 | 15 | 21 |
| 1973–74 | 66 | 31 | 35 | 16 | 26 |

Mention should be made of previous litigation that arose in this court when, at the end of the 1969–70 school year, the school board adopted a policy requiring that all teachers then in the system, to be eligible for reemployment in 1970–71, take examinations and score not less than 800 points on the National Teacher Examination or not less than 650 points on the Graduate Record Examination. When this policy was implemented, ten black teachers were dismissed, and three other blacks were summarily discharged without due process hearings. Pack was not one of the teachers thus dismissed or not rehired. In August 1971, this court struck down as invalid the board's policy to the extent that it was a precondition for the retention and reemployment of in-service teachers, and ordered reinstatement and other relief for the affected teachers.[5] After this ruling, the School District did not seek an appeal but promptly complied with the court's order. By September 15, this court made a finding that all relief granted, including reinstatement and back pay where appropriate, had been met by the School District.

The board's former policy, declared invalid by this court, had been adopted before Starkey Morgan assumed the post of superintendent on July 1, 1970. In vacancies thereafter occurring, Morgan replaced a black teacher with another black and a white teacher with a white wherever such was possible. He met with black citizens in the community to discuss recommendations for hiring black administrators and one person so recommended was employed as junior high school principal. The district employed both black and white counsellors in the field of career education. Morgan felt the need, nevertheless, of instituting a procedure to evaluate job performance of administrators and classroom teachers and he studied several evaluation instruments in current use by other school districts. In January 1972, Superintendent Morgan recommended to the board, and it approved without dissent, an evaluation instrument which was largely the creation of Dr. Jere Robbins, Chairman of the Department of Educational Administration, University of Mississippi. Robbins was not engaged by Okolona schools to devise a form similar to what he had developed for use in Panola County schools, but Morgan principally relied upon the Robbins approach. Morgan circulated the evaluation form among the Okolona public school teachers, freely solicited their views, and received no adverse comments. The evaluation instrument employed a five-point rating scale,[6] for an evaluation of a teacher's personal characteristics (in 5 areas), relationships (in 5 areas), and classroom procedures (in 10 areas) by utilizing a four-step procedure.[7]

---

5. On evidence that Okolona's policy created a racial qualification in that it disqualified a disproportionately greater number of black than white teachers, and the tests were not shown to have manifest relation to job performance, we held the board's policy was violative of the Equal Protection Clause. The case was held to be legally indistinguishable from Baker v. Columbus Municipal Separate School District, 329 F.Supp. 706 (N.D.Miss. 1971), aff'd. 462 F.2d 1112 (5 Cir. 1972).

6. 5—superior
4—satisfactory
3—needs improvement
2—quite weak
1—highly unsatisfactory

7. Step 1 involved each teacher undergoing a self-evaluation in December of each year.

Step 2 called for the evaluation of each teacher by his principal, with a provision that the principal's evaluation would be final where the teacher received ratings of 5 or 4 in all categories. However, where in the principal's estimation a teacher received a rating of 3, 2 or 1 on any item, the principal and teacher were to confer with respect to the teacher's weak areas and methods planned for alleviating the weakness. At such conference, the teacher would have available the principal's evaluation of him.
Step 3 provided that in February of each year, the teachers in the school would elect a committee of two disinterested teachers—one white and one black—to evaluate any fellow teacher receiving a rating of 2 or 1 by the principal the preceding month. The two teachers would make evaluation only in the

Pack, along with all other high school teachers, was evaluated in 1971–72 by Anderson and was found deficient in certain areas. After a conference, Anderson noted an improvement in Pack's support for the school, but not in classroom performance. Pack was nevertheless recommended for continued employment during the 1972–73 school year.

During his last year, Pack was closely observed by Anderson at diverse times, in the halls and elsewhere, including three full class periods. Anderson observed that Pack had unusual disciplinary problems arise in his classroom, that Pack failed to command attention and respect of his students, that he pursued monotonous and inadequate teaching methods, and was slow in following administrative policies. In December 1972, Pack made a self evaluation that was much higher than Anderson's, yet Anderson's low rating of Pack was in the main confirmed by two faculty-chosen disinterested high school teachers (Mr. Baker, white, and Ms. Brumby, black), who separately and on at least two different occasions noted his classroom performance in certain requested areas. Anderson, in conference with Pack, stressed the need to improve his efficiency and

offered to bring in an outside evaluator, but this was declined by Pack.

On the basis of the observations and findings made in the evaluation process, Anderson decided that he should not recommend Pack for continued employment. Prior to this action there had been no disagreement or clash of personality between Pack and Anderson, nor was Anderson motivated by any thought other than Pack should be replaced by a more competent teacher. Anderson states, and it is accepted as a fact by the court, that Pack's race played no part whatever in the decision not to recommend him to the Superintendent for reemployment.

Plaintiffs' chief contention is that Pack is a *Singleton*-protected teacher not subject to lawful dismissal by using an evaluation procedure which failed to satisfy *Singleton's* stringent requirement as "objective and reasonable nondiscriminatory standards" applicable to the entire teaching staff. *Singleton's* terms respecting faculty were, of course, mandated for this district in our comprehensive desegregation order and are binding upon the defendants to the full extent of its express provisions, and Pack was a faculty member at the time of that order.[8]

low rated areas, with final decision on ratings determined by majority vote of the principal and the two teachers.

Step 4 required the principal to compile final ratings and supply copy to the teacher. To be considered for reemployment, a teacher would have to have a final total rating of at least 70. No teacher having three or more ratings below 3 would be considered for reemployment, nor would any teacher having a rating of 1 in certain items on the evaluation form (physical health, mental health, teacher-administrator relationships) be considered for reemployment.

8. "(2) Staff members who work directly with children, and professional staff who work on the administrative level will be hired, assigned, promoted, paid, demoted, dismissed, and otherwise treated without regard to race, color, or national origin.

"(3) If there is to be a reduction in the number of principals, teachers, teacher-aides, or other professional staff employed by the school district which will result in a dismissal or demotion of any such staff members,

the staff members to be dismissed or demoted must be selected on the basis of objective and reasonable non-discriminatory standards from among all the staff of the school district. In addition if there is any such dismissal or demotion, no staff vacancy may be filled through recruitment of a person of a race, color, or national origin different from that of the individual dismissed or demoted, until each displaced staff member who is qualified has had an opportunity to fill the vacancy and has failed to accept an offer to do so.

"Prior to such a reduction, the school board will develop or require the development of nonracial objective criteria to be used in selecting the staff member who is to be dismissed or demoted. These criteria shall be available for public inspection and shall be retained by the school district. The school district also shall record and preserve the evaluation of staff members under the criteria. Such evaluation shall be made available upon request to the dismissed or demoted employee." (Court order dated January 21, 1970).

A mere statement of the familiar issue brings into view the instructive approach mandated for us by the Fifth Circuit in Thompson v. Madison County Board of Education, 476 F.2d 676, 679 (1973), as follows:

"In sum, it is essential to any appraisal of the propriety of a school board's dismissal of a teacher to determine first if desegregation is still in process, for what constitutes 'just cause' will vary greatly depending on whether or not *Singleton* is applicable. Moreover, if desegregation has been fully completed, it is necessary to determine if the school district has a tenure system; if so, then it is important to ascertain whether the plaintiffs are tenured or have a reasonable expectation of reemployment. Finally, the timing of the discharge is significant—i. e., whether it comes at the end of a school year or during the school year."

Plaintiffs' assumption that *Singleton* protects Pack in the present situation is not maintainable for several reasons.

The Okolona public schools had for 3½ years operated as a unitary school system in all respects, with desegregated student bodies, faculty, staff, activities, services and transportation and had fully achieved the status of a unitary school system. Thus, when Pack was not rehired at the close of the 1972–73 school year, the system had effectively operated for seven semesters after entry of the desegregation order. This continuous experience was without impediment or hindrance of any kind, excepting the incident of former teacher litigation previously mentioned, but in which Pack played no role whatever; and that litigation resulted in the board's quickly and fully complying with constitutional requirements. We hold that on these plain facts the School District had successfully achieved unitary status so that its schools were no longer in the process of desegregation when Anderson in the spring of 1972 decided not to recommend Pack for continued employment. These

facts surely justify us in concluding that this School District had met · the standard laid down by the Fifth Circuit in Lemon v. Bossier Parish, 444 F.2d 1400 (1971), by having effectively "for *several years* operated as a unitary system." *Lemon's* standard, which this court twice applied in United States v. Coffeeville Consolidated School District, 365 F.Supp. 990 (N.D.Miss.1973), and again in Keglar v. East Tallahatchie School District, 378 F.Supp. 1269 (N.D. Miss.1974), to reject contentions that the process of desegregation in those districts had been concluded so as to remove *Singleton's* stricture, sustains us in our present position. In *Coffeeville*, one semester's experience was deemed to be insufficient time, while in *East Tallahatchie*, two years' experience after a comprehensive desegregation order was not enough to complete the desegregation process, given a record of traumatic and hectic events attending local public school desegregation for a substantial portion of the first year (marked by a large withdrawal of white students and mass boycott by black students), and necessitating faculty reduction the second year in the conversion to unitary schools. Nevertheless, the Fifth Circuit has emphasized that when the desegregation process is at an end, *Singleton's* stringent requirements become inapplicable. McLaurin v. Columbia Municipal Separate School District, 478 F.2d 348 (5 Cir. 1973); *Thompson*, supra; Thompson v. Madison County Board of Education, 496 F.2d 682 (5 Cir., 1974).

We are supported in our view that Okolona schools were fully unitary by evidence that no reduction in teaching staff became necessary because of desegregation at any time during the seven-semester period under review. Indeed, Pack's dismissal was in no way related to faculty reorganization due to a conversion from dual schools; and it is precisely in a context of reduction in staff that *Singleton's* requirements for "objective and non-discriminatory standards" ordinarily come into play for ascertaining what teacher or teachers from

the entire staff are to be selected for dismissal. In the present case, the high school faculty, of which Pack was a member, increased in number. The school officials, whenever a vacancy developed, undertook to replace a black teacher with a black and a white teacher with a white. In this respect the School District was actually exceeding the requirements enunciated by the Fifth Circuit in Carter v. West Feliciana Parish School Board, 432 F.2d 875 (1970), and reaffirmed in Lee v. Macon County Board of Education, 482 F.2d 1253 (1973). Those cases specifically rejected the notion, which is nevertheless here advanced by plaintiffs, that the entry of a desegregation order should "freeze" the faculty racial ratio present in the system when faculty desegregation first occurred. *Lee* clearly enunciated that *Singleton* required only that "faculty desegregation will be accomplished by invoking the system-wide ratio as a rule for each particular school in the system and that thereafter the system will function from the standpoint of faculty and staff *on the merit system*. . . . This means that once a unitary system has been established the system-wide racial ratio may thereafter change from time to time as a result of nondiscriminatory application of *objective merit standards* in the selection and composition of faculty and staff." 432 F.2d at 878–879 (Emphasis added).

■ It follows that with a unitary system having been completely established in the Okolona schools without any reduction in teaching staff, and where the schools had operated as long as these schools had without frustration or impediment to full and meaningful desegregation, *Singleton's* mandate for objective standards are not applicable to Pack's failure to secure continued employment at the end of the 1972–73 school year.

Plaintiffs next argue that, apart from the scope of *Singleton*, the Fourteenth Amendment may be availed of to prevent Pack's dismissal because the evaluation process by which he was appraised was subjective, not rationally based and arbitrarily invoked against him by the defendants. We are unpersuaded by these broad claims, which we find to be without factual support or legal precedent. Considerable testimony was offered by plaintiffs' educational experts, some of whom had impressive credentials in the field of educational evaluation. These experts criticized Okolona's evaluation instrument and process as excessively subjective, lacking in specificity, and generally regarded of small utility for correctly rating job performance of classroom teachers. Other educators, having expertise in teacher evaluation data and offered by defendants, viewed the form and procedure as both useful and reasonably designed. Several clear facts emerge from conflicting opinions of learned specialists thus arrayed. First, all experts agreed that the form was, on its face, racially nondiscriminatory. Second, all experts agreed that the job performance of a teacher is difficult to measure and that Okolona's evaluation form had, at least, some elements of subjectivity. All experts agreed that in the present state of the art, it is difficult if not impossible to measure in purely objective terms the art, as opposed to the science, of teaching. The proof indicates that different evaluation forms to measure teacher performance are currently in use by school districts in many areas of the Nation.

■ The federal courts surely are not called upon, in discharging their duty to bring about a unitary system of public schools under the Constitution, to assume the role of evaluation experts, or don the robes of academicians to appraise or judge the utility or value of evaluation procedures which may be used in the public schools. We decline the plaintiffs' invitation to assume that formidable task in this case, as we firmly believe the judicial duty is discharged when a court is able to find from substantial evidence, as we do, that the challenged evaluation instrument is neither facially nor as applied discriminatory because of

race or other impermissible reason. There is not the slightest evidence that Okolona's procedure burdens black teachers more than white instructors, nor do plaintiffs contend that it creates racial classification in any sense of the term.

■■ That the form may contain a certain degree of "subjectivity", and is not wholly or purely "objective", in a reasonable effort to measure a teacher's classroom performance, does not offend the Equal Protection Clause, absent invidious discrimination.[9] Neither does the mechanism of the evaluation procedure, in which the teacher, the principal, and two fellow teachers (of both races) participated, run afoul of the Due Process Clause. This court is content to leave the concerns for improving the quality of instructors in the public schools to the lawfully constituted officials charged with that important public duty.

■ Since *Singleton's* requirements have been satisfied, this School District and its officials possessed "the discretionary right of local school authorities in Mississippi to supervise the conduct of their teachers and to refuse to renew their contract." Circuit Judge Dyer, dissenting in *McLaurin,* supra, 478 F.2d at 356. In Mississippi public school teachers are without job tenure, Jennings v. Meridian Municipal Separate School District, 337 F.Supp. 567 (S.D.Miss. 1971), aff'd. 453 F.2d 413 (5 Cir. 1971), and school officials are not required to rehire teachers beyond the term provided by the contract of employment, so long as the failure to reemploy is not racially motivated or in violation of teachers' other federally protected rights. Pack was for seven years successively employed on one-year contracts of employment, and the evidence clearly negates that he, as a non-tenured teacher, had an expectation of reemployment. The uncontradicted evi-

dence is that, prior to not being recommended, he had at least a full year's warning from his principal that he had to show improvement to remain in the faculty. Given these conditions, the school board and its administrators had the lawful right not to rehire Pack for professional incompetence or other cause. This is the indisputable teaching of *Thompson,* supra, 476 F.2d at 679:

"Furthermore, if the school district has no tenure system or if the plaintiffs were not tenured and had no expectation of reemployment, the school board's refusal to rehire them for whatever reason it chose would be justified, because such teachers would have no prospect of continuous employment from one school year to the next."

■■ Finally, the record shows that due process, both procedural and substantive, was accorded Pack. He was granted a hearing before a board which was composed of impartial persons, who heard the evidence, pro and con, touching upon the issue of Pack's professional competence. At this hearing Pack had the benefit of counsel who cross-examined persons giving adverse testimony and who presented evidence in Pack's behalf. The entire proceeding, which the board freely offered to Pack and which this court required that he avail himself of, was throughout fairly and properly conducted. There was substantial evidence supporting the principal's decision not to recommend Pack, and since the board acted to uphold the recommendation not to rehire, this court would not be justified in overthrowing its decision. Where a proceeding before a school board "is conducted in accordance with the dictates of procedural due process", its finding "is entitled to great weight and if substantial evidence appears to support the school board's action that ordinarily ends the matter."

9. We emphasize that the case sub judice, not being controlled by *Singleton,* is not subject to having the evaluation form and procedure judged by the strict standards of objectivity required in *Singleton*-type cases, such as U. S. v. Texas Education Agency, 459 F.2d 600 (5 Cir. 1972); *McLaurin,* supra; and *Coffeeville,* supra.

*Thompson,* supra, Judge Clark concurring at 680; Green v. Board of Regents of Texas Tech Univ., 474 F.2d 594 (5 Cir. 1973); *Coffeeville,* supra, 365 F. Supp. at 1002. Since it is not for this court to pass upon credibility issues arising from evidence tendered to the Okolona school board or to substitute its judgment for that of the board, that is the end of Pack's case.

For the foregoing reasons, plaintiffs' motion seeking equitable relief, including Pack's reinstatement, shall be denied.

An order dismissing the motion shall accordingly be entered.