George PICKENS et al.,
Plaintiffs-Appellants,

v.

OKOLONA MUNICIPAL SEPARATE
SCHOOL DISTRICT et al.,
Defendants-Appellees.

No. 74–3690.

United States Court of Appeals,
Fifth Circuit.

Feb. 23, 1976.

· Lewis Myers, Jr., Maureen Malone, Wilhelm H. Joseph, North Miss. Rural Legal Services, Oxford, Miss., Johnnie E. Walls, Jr., Greenwood, Miss., John Jackson, Batesville, Miss., for plaintiffs-appellants.

Walter M. O'Barr, R. Kenneth Coleman, Okolona, Miss., for defendants-appellees.

Before BROWN, Chief Judge, GOLD-BERG and RONEY, Circuit Judges.

GOLDBERG, Circuit Judge:

Plaintiffs-appellants, black individuals residing in the Okolona Municipal Separate School District, appeal from the district court's refusal to order back pay and reinstatement for Lagrone Pack, a black high school teacher not rehired for the 1973–1974 school year.[1] *Pickens v. Okolona Municipal Separate School District,* 380 F.Supp. 1036 (N.D.Miss.1974). Appellants argue that the decision not to renew Pack's contract resulted from the use of non-objective evaluative criteria which violate this Court's mandate in *Singleton v. Jackson Municipal Separate School District,* 5 Cir. 1970, 419 F.2d 1211 (en banc). In *Singleton,* we articulated, *inter alia,* procedures for dismissing and hiring school personnel in the period following desegregation. The appellees counter that *Singleton* is inapplicable; that even if *Singleton* does apply, the test used in dismissing Pack was sufficiently objective to meet *Singleton* standards; and that in any event the failure to rehire Pack resulted from his substantial deficiencies as a teacher and not from prohibited racial considerations. After a full evidentiary hearing, the district court agreed with defendants that *Singleton* did not govern this case. 380 F.Supp. at 1041–42. The trial judge also held that apart from *Singleton,* defendants were due no relief under the Fourteenth Amendment given the court's finding that "the challenged evaluation instrument is neither facially nor as applied discriminatory because of race or other impermissible reason. There is not the slightest evidence that Okolona's procedure burdens black teachers more than white instructors . . . ." 380 F.Supp. at 1042–43.

Appellants here contest only the ruling with respect to their *Singleton* claim. After closely examining the law and facts, we agree with the district court that *Singleton* does not apply in this instance. Consequently, we affirm that court's decision.

*General Background*

We need only summarize the facts set forth in the district court's commendably thorough opinion. The Okolona School System first hired Lagrone Pack in 1966. He taught government and civics to 9th and 12th grade students until the 1973 refusal to reemploy which is the center of this controversy. Before desegregation, Pack had worked at the town's all-black high school. After 1970, school officials assigned him to the single integrated high school created under the court's order. 380 F.Supp. at 1038.

Beginning with the 1970–71 school year, the Okolona School Board required as a condition of reemployment that all teachers score at least 800 on the National Teachers Examination or 650 on the Graduate Record Examination. Plaintiffs challenged the use of these examinations. In August 1971, the district court, after determining that Okolona's testing policy disqualified a proportionately greater number of black than white teachers and that the tests had no manifest relation to job performance, concluded that the evaluative scheme violated the Equal Protection Clause. 380 F.Supp. at 1039 & n. 5.

In 1972, the school board approved an evaluation instrument created principally by Dr. Jere Robbins, Chairman of the Department of Educational Administration, University of Mississippi. The test analyzed a teacher's performance in twenty areas. Each area would be rated on a five point scale with a maximum total score of 100. The district court judge described the procedure for administering the test:

> Step 1 involved each teacher undergoing a self-evaluation in December of each year.

1. Appellants brought their action as a motion in the 1970 desegregation suit in which the district court ordered the immediate dismantling of Okolona's segregated educational system.

Step 2 called for the evaluation of each teacher by his principal, with a provision that the principal's evaluation would be final where the teacher received ratings of 5 or 4 in all categories. However, where in the principal's estimation a teacher received a rating of 3, 2 or 1 on any item, the principal and teacher were to confer with respect to the teacher's weak areas and methods planned for alleviating the weakness. At such conference, the teacher would have available the principal's evaluation of him.

Step 3 provided that in February of each year, the teachers in the school would elect a committee of two disinterested teachers—one white and one black—to evaluate any fellow teacher receiving a rating of 2 or 1 by the principal the preceding month. The two teachers would make evaluation only in the low rated areas, with final decision on ratings determined by majority vote of the principal and the two teachers.

Step 4 required the principal to compile final ratings and supply copy to the teacher. To be considered for reemployment, a teacher would have to have a final total rating of at least 70. No teacher having three or more ratings below 3 would be considered for reemployment, nor would any teacher having a rating of 1 in certain items on the evaluation form (physical health, mental health, teacher-administrator relationships) be considered for reemployment. 380 F.Supp. 1039–40 n. 7

Okolona High School principal James Anderson told Pack in 1972 that the 1971–72 evaluation indicated deficient performances in certain areas but that Pack would be rehired nonetheless. During the next year, Anderson made a special effort to observe Pack. He noted that Pack had unusual classroom disciplinary problems, failed to command the attention and respect of his students, utilized monotonous and inadequate teaching methods, and responded slowly to administrative policies. 380 F.Supp. at 1040. The district court noted that "Anderson's low rating of Pack was in the main confirmed by two faculty-chosen disinterested high school teachers," one black and one white, both of whom had observed Pack's classroom performance. *Id.* The trial judge further said:

On the basis of the observations and findings made in the evaluation process, Anderson decided that he should not recommend Pack for continued employment. Prior to this action there had been no disagreement or clash of personality between Pack and Anderson, nor was Anderson motivated by any thought other than Pack should be replaced by a more competent teacher. Anderson states, and it is accepted as a fact by the court, that Pack's race played no part whatever in the decision not to recommend him to the Superintendent for reemployment. *Id.*

Pack declined an offer to bring in an outside evaluator and after receiving notice of his status engaged counsel. The school board, composed of four whites and one black, provided Pack a full hearing and then voted unanimously not to rehire him.[2]

### Singleton and the Reduction Requirement

■ Plaintiffs' contend that Pack is protected from this discharge by our de-

---

**2.** Pack claims no violation of procedural due process. The district court found that the board "was composed of impartial persons, who heard the evidence, pro and con, touching upon the issue of Pack's professional competence. At this hearing Pack had the benefit of counsel who cross-examined persons giving adverse testimony and who presented evidence in Pack's behalf. The entire proceeding, which the board freely offered to Pack and which this court required that he avail himself of, was throughout fairly and properly conducted." 380 F.Supp. 1043. We strongly approve not only the district court's efforts to insure that this controversy was brought before the local school board for their careful consideration, but also the court's own later full evidentiary hearing. *See Thompson v. Madison County Board of Education,* 5 Cir. 1973, 476 F.2d 676, 678.

cision in *Singleton v. Jackson Municipal Separate School District,* 5 Cir. 1970, 419 F.2d 1211 (en banc). *Singleton* sought to cope with the consequences of our order that segregated school systems be dismantled immediately. We realized at the time of that decision that achievement of a unitary school system often results in elimination of duplicative jobs needed only so long as the local authorities maintain a wasteful and unlawful dual educational system. Moreover, we recognized that in some instances parents reacting to desegregation would withdraw their children from the public schools, thus further limiting the personnel required for school operations. In order to prevent the hardship caused by the loss of these superfluous jobs from falling disproportionately on black teachers and administrators, this Court established specific criteria to govern reductions occurring during conversion from a dual to a unitary school system. We said:

> If there is to be a reduction in the number of principals, teachers, teacher-aides, or other professional staff employed by the school district which will result in a dismissal or demotion of any such staff members, the staff member to be dismissed or demoted must be selected on the basis of objective and reasonable nondiscriminatory standards from among all the staff of the school district. In addition if there is any such dismissal or demotion, no staff vacancy may be filled through recruitment of a person of a race, color, or national origin different from that of the individual dismissed or demoted, until each displaced staff member who is qualified has had an opportunity to fill the vacancy and has failed to accept an offer to do so.
>
> Prior to such a reduction, the school board will develop or require the development of nonracial objective criteria to be used in selecting the staff member who is to be dismissed or demoted. These criteria shall be available for public inspection and shall be

retained by the school district. The school district also shall record and preserve the evaluation of staff members under the criteria. Such evaluation shall be made available upon request to the dismissed or demoted employee. 419 F.2d at 1218.

However, this Court did not intend that the strict requirements of *Singleton* apply in the absence of desegregation related reductions. In *Thompson v. Madison County Board of Education,* 5 Cir. 1974, 496 F.2d 682 and *McLaurin v. Columbia Municipal Separate School District,* 5 Cir. 1973, 478 F.2d 348, we considered plaintiffs' *Singleton* claims only after ascertaining that there "was in fact a reduction in the number of teaching personnel of the District . . . ." 478 F.2d at 352. *See also Smith v. Concordia Parish School Board,* 393 F.Supp. 1101, 1102 (W.D.La.1975). A similar determination must be made here.

The trial judge found that

> ". . . no reduction in teaching staff became necessary because of desegregation . . . during the . . . period under review. Indeed, Pack's dismissal was in no way related to faculty reorganization due to a conversion from dual schools . . . . . [T]he high school faculty, of which Pack was a member, increased in number." 380 F.Supp. at 1041–42.

The record indicates that the number of high school teachers climbed from 32 in 1970–71 to 42 in 1973–74. No year showed a decrease in the high school faculty. In fact, in the school year following the refusal to rehire Pack, the number of black high school teachers increased by one (to 16) over the previous year's total. The white high school faculty increased their numbers from 21 to 26. Finally, the district as a whole showed larger numbers of teachers in every year, including the period following the non-renewal of Pack's contract, except one. Given these figures, we cannot say that the district erred in its conclusion that no relevant reduction occurred and that Pack is not

entitled to the procedural protection of *Singleton*.[3]

■ In other words, a dismissal or failure to rehire an individual teacher will not create a *Singleton* reduction where the absolute number of available positions remains the same or increases. Here, Pack's job was not eliminated. Instead, the school officials removed Pack, replaced him with another teacher, and added six new high school positions. In the absence of any demonstrated desegregation related reduction in the number of teaching slots, *Singleton* standards do not apply.

3. The following table summarizes the personnel statistics for the Okolona schools for the period in question.

#### High School Faculty

| Year | Black | White | Total |
|---|---|---|---|
| 1970–71 | 14 * | 18 * | 32 |
| 1971–72 | 17 | 19 | 36 |
| 1972–73 | 15 | 21 | 36 |
| 1973–74 | 16 | 26 | 42 |

#### Elementary Faculty

| 1970–71 | 18 | 17 | 35 |
|---|---|---|---|
| 1971–72 | 17 | 20 | 37 |
| 1972–73 | 15 | 18 | 33 |
| 1973–74 | 15 | 19 | 34 |

#### Total Full Time Teachers

| 1970–71 | 32 | 35 * | 67 * |
|---|---|---|---|
| 1971–72 | 34 | 39 | 73 |
| 1972–73 | 30 | 39 | 69 |
| 1973–74 | 31 | 45 * | 76 * |

Over the four year period 1970–1974 the number of black high school teachers increased by two while the number of white high school teachers increased by nine. Whether or not these last two figures or the hiring policies behind them might entitle anyone to relief apart from the present lawsuit is a question not before us and about which we express no opinion. We find *only* because there was no reduction, *Singleton*, on which plaintiffs base this appeal, has no applicability.

In addition, we approve the district court's primary focus on the *high school* numbers. This approach may be used where, as here, the refusal to rehire a high school teacher in no way directly or indirectly relates to the loss of teaching positions in the elementary grades. In this case, the elementary losses occurred prior to Pack's dismissal and proved to be temporary (there were 38 elementary teachers in 1974–75). The overall school system showed an increase in total faculty (69 to 76 *) for the year following the failure to rehire Pack.

As an additional reason for holding that Pack fails to come under the *Singleton* aegis, the trial court found that the Okolona School System had achieved full unitary status and was therefore no longer subject to the strict *Singleton* requirements. In view of our analysis above, we need not reach this question, and consequently, we intimate no views with respect to this part of the trial judge's opinion. Similarly, we express no opinion as to whether or not the challenged test meets *Singleton* standards.

■ *Singleton* was not designed to grant a black teacher a job in perpetuity. It proscribed dismissals of black

Moreover, no claim is made that *Singleton* was violated with respect to the earlier loss of elementary school positions nor that these losses were desegregation related. In fact, going beyond the straightforward arithmetic question of reductions, plaintiffs have not drawn our attention to any evidence which would controvert the district court's determination that no *desegregation induced* reductions occurred.

* Our review of the district court's figures, 380 F.Supp. at 1038 n. 3, reveals some errors. The annual reports of the Okolona School System which are filed with the court indicate that in 1970–71 the number of black high school teachers was 14, not 18, and that the number of white high school teachers was 18, not 17. In addition, the report-makers improperly added the 1970–71 numbers with the result that they informed the court of 72 instead of the correct 67 total faculty members. A further error occurred in the 1973–74 annual report where the district court noted 66 instead of the actual 76 faculty members. Although listing 26 white high school teachers and 19 white elementary school teachers, the 1973–74 report mistakenly totalled these two figures as 35. Adding the erroneously computed 35 white teachers to the 31 black teachers, the district court arrived at its 66 number. But because the true subtotals are 45 (white) and 31 (black), the correct 1973–74 total is 76 teachers. No mathematical wizardry is required to make these corrections.

When interstitial analysis of the trial court opinion reveals apparent errors such as these, it is our duty to make the alterations rather than further delaying final adjudication by remanding the whole controversy for technical corrections which to us are beyond cavil. In any event, even a finding of 66 teachers in 1973–74 would not detract from our previous conclusion that no *Singleton* reduction occurred in the Okolona high schools and that as a result Pack cannot claim the protection of that case.

teachers in the absence of objective standards only when a desegregation related reduction in force occurred. The arithmetic of the Okolona School District will not support a finding of such a reduction, much less a desegregation induced reduction. Since this threshold requirement is not satisfied, we are without power to apply the strict *Singleton* criteria to Pack's discharge. Thus we affirm the decision of the district court.

Affirmed.