Bennie G. **THOMPSON**, Plaintiff,

Evelyn Thomas et al., etc., Plaintiffs-Appellants,

v.

**MADISON COUNTY BOARD OF EDUCATION et al., etc.,** Defendants-Appellees.

No. 73-3509

**Summary Calendar.***

United States Court of Appeals, Fifth Circuit.

June 20, 1974.

* Rule 18, 5 Cir., see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir. 1970, 431 F.2d 409, Part I.

Frank R. Parker, Lawyers' Committee for Civil Rights Under Law, Isaiah Madison, James M. Abram, Jackson, Miss., for plaintiffs-appellants.

G. Milton Case, R. L. Goza, Canton, Miss., for defendants-appellees.

Before BROWN, Chief Judge, and THORNBERRY and AINSWORTH, Circuit Judges.

THORNBERRY, Circuit Judge:

This is the second appeal for Sutton and Thomas from adverse determina-

tions by the district court. Believing that their teaching contracts were not renewed in violation of the principles we enunciated in Singleton v. Jackson Municipal Separate School District, 5th Cir. 1970, 419 F.2d 1211, cert. denied, 396 U.S. 1032, 90 S.Ct. 612, 24 L.Ed.2d 530, they sought injunctive relief, back pay, attorney's fees, and reimbursement for other expenses. In the first hearing, the district court found that the refusal of the Madison County Board of Education to rehire the two teachers was based on "just and proper cause." We reversed because we were unable

> to determine whether the Madison County School District is still in the process of implementing the desegregation orders of this Court or whether desegregation has already been completely achieved.

5th Cir. 1973, 476 F.2d at 678. We had before us no record on which to predicate a decision concerning the applicability of Singleton, because the district court had refused to grant the plaintiffs a full evidentiary hearing, choosing instead to rely on a school board hearing which undeniably did not and could not face up to the Singleton issue. On remand, the district court conducted the required hearing and found that Singleton was inapplicable and thus that the Board was entitled to refuse to rehire the teachers without regard to the requirements of that decision; that both teachers were refused rehiring for "just and proper cause" based on their classroom performances; that in the absence of tenure, the Board of Education could not rehire the teachers because they had not been recommended for re-employment by the Superintendent as state law required; and that even if the plaintiffs had been successful, they would not have been entitled to an award for attorneys' fees. Again, we reverse and remand, this time with directions to grant the relief requested in part and to consider further the request for back pay and certain other expenses.

## The Applicability of Singleton

This Court's en banc decision in Singleton prescribed detailed procedures for the effectuation of staff reductions resulting from the judicially-ordered desegregation of formerly dual public educational systems. Singleton v. Jackson Municipal Separate School District, supra, 419 F.2d at 1218.

If there is to be a reduction in the number of principals, teachers, teacher-aides, or other professional staff employed by the school district which will result in a dismissal or demotion of any such staff members, the staff member to be dismissed or demoted must be selected on the basis of objective and reasonable non-discriminatory standards from among all the staff of the school district. In addition if there is any such dismissal or demotion, no staff vacancy may be filled through recruitment of a person of a race, color, or national origin different from that of the individual dismissed or demoted, until each displaced staff member who is qualified has an opportunity to fill the vacancy and has failed to accept an offer to do so.

Prior to such a reduction, the school board will develop or require the development of nonracial objective criteria to be used in selecting the staff member who is to be dismissed or demoted. These criteria shall be available for public inspection and shall be retained by the school district. The school district also shall record and preserve the evaluation of staff members under the criteria. Such evaluation shall be made available upon request to the dismissed or demoted employee.

"Demotion" as used above includes any reassignment (1) under which the staff member receives less pay or has less responsibility than under the assignment he held previously, (2) which requires a lesser degree of skill than did the assignment he held previously, or (3) under which the staff

member is asked to teach a subject or grade other than one for which he is certified or for which he has had substantial experience within a reasonably current period. In general and depending upon the subject matter involved, five years is such a reasonable period.

419 F.2d at 1218. It is undisputed that the Board has not even attempted to adopt *Singleton* procedures, and the district court so found. But the district court concluded that

When these two black teachers were not rehired, this school board was not in default, or delinquent in any respect in compliance with any plan for desegregation recommended by HEW pursuant to order of the United States Court of Appeals for this Circuit. It is an irrefragable fact that these two teachers involved in this suit were not displaced pursuant to or by virtue of any implementation of the *Singleton* order . . . The *Singleton* order and such criteria therein as to not rehiring teachers simply has no application to the facts and circumstances in this case, and the propriety vel non of the failure of this school board to rehire these two teachers must be viewed and considered and decided solely from conventional aspects of annual employment . . .

The Madison County School System was desegregated and converted into a unitary school system as described and defined by the Supreme Court of the United States. These two black teachers were not displaced and were not rehired as a result of the implementation of *Singleton* . . ., but were properly not rehired for just and proper cause outside the sweep of *Singleton* criteria . . .

The court found that the "Madison County School System was converted to a unitary school system as defined by the [Supreme] Court on the 31st day of December 1969." This is the date which we set for the introduction of the desegregation plan. United States v. Hinds County School Board, 5th Cir. 1969, 423 F.2d 1264, cert. denied, 1970, 396 U.S. 1032, 90 S.Ct. 612, 24 L.Ed.2d 531.

The evidence overwhelmingly indicates that the school system was not integrated December 31, 1969, was not integrated at the time of the refusal to rehire the plaintiffs in March, 1970, and indeed may not have been integrated at the time of the last hearing. Pursuant to a prior order of this Court, the school district has filed status reports which show the following:

1969–70 school year (as of April 15, 1970)

I (a) The number of students enrolled in the District by race is:

White: 922
Black: 3448

(b) The number of students enrolled in each school of the District by race is:

| School | White | Black |
|---|---|---|
| Velma Jackson | 0 | 1,107 |
| Luther Bransom | 0 | 476 |
| Madison-Ridgeland | 268 | 235 |
| Rosa Scott | 32 | 703 |
| Ridgeland Elementary | 295 | 37 |
| East Flora | 0 | 740 |
| Flora | 327 | 150 |

II (a) The number of full time teachers in the District by race is:

White: 69
Black: 162

(b) The number of full time teachers in each school of the District by race is:

| School | White | Black |
|---|---|---|
| Velma Jackson | 6 | 50 |
| Luther Bransom | 0 | 24 |
| Madison-Ridgeland | 24 | 5 |
| Rosa Scott | 6 | 40 |
| Ridgeland Elementary | 12 | 0 |
| East Flora | 0 | 37 |
| Flora | 21 | 6 |

1970–71 school year (as of March 15, 1971)

I (a) The number of students enrolled in the District by race is:

White: 762
Black: 3522

(b) The number of students enrolled in each school of the District by race is:

| School | White | Black |
|---|---|---|
| Velma Jackson | 0 | 1,124 |
| Luther Branson | 1 | 445 |
| Madison-Ridgeland | 328 | 214 |
| Rose Scott | 0 | 660 |
| Ridgeland Elementary | 311 | 104 |
| East Flora | 0 | 835 |
| Flora | 122 | 140 |

II (a) The number of full time teachers in the District by race is:

White: 59
Black: 155

(b) The number of full time teachers in each school of the District by race is:

| School | White | Black |
|---|---|---|
| Velma Jackson | 4 | 48 |
| Luther Branson | 1 | 24 |
| Madison-Ridgeland | 23½ | 4½ |
| Rosa Scott | 3 | 35 |
| Ridgeland Elementary | 15 | 1½ |
| East Flora | 1 | 39 |
| Flora | 11½ | 3 |

1971–72 School year (as of December 1, 1971)

I (a) The number of students enrolled in the District by race is:

White: 722
Black: 3,400

(b) The number of students enrolled in each school of the District by race is:

| School | White | Black |
|---|---|---|
| Velma Jackson | 0 | 1,087 |
| Luther Branson | 3 | 434 |
| East Flora | 0 | 812 |
| Flora | 82 | 122 |
| Madison-Ridgeland | 168 | 290 |
| Ridgeland | 191 | 245 |
| Rosa Scott | 278 | 410 |
| Business & Commerce | 21 | 194 |

II (a) The number of full time teachers in the District by race is:

White: 38
Black: 157

(b) The number of full time teachers in each school of the District by race is:

| School | White | Black |
|---|---|---|
| Ridgeland | 7 | 11 |
| Madison-Ridgeland | 8 | 14 |
| Rosa Scott | 8 | 20 |
| Flora | 3 | 6 |
| East Flora | 4 | 35 |
| Luther Branson | 1 | 21 |
| Velma Jackson | 4 | 45 |
| Business & Commerce | 3 | 5 |

1971–72 School Year (as of April 15, 1972)

I (a) The number of students enrolled in the District by race is:

White: 769
Black: 3,318

(b) The number of students enrolled in each school of the District by race is:

| School | White | Black |
|---|---|---|
| Velma Jackson | 0 | 1,028 |
| Luther Branson | 4 | 457 |
| East Flora | 0 | 826 |
| Flora | 122 | 92 |
| Madison-Ridgeland | 155 | 275 |
| Ridgeland | 172 | 235 |
| Rosa Scott | 316 | 405 |
| Business & Commerce | 27 | 196 |

II (a) The number of full time teachers in the District by race is:

White: 44
Black: 144

(b) The number of full time teachers in each school of the District by race is:

| School | White | Black |
|---|---|---|
| Rosa Scott | 9.1 | 20 |
| Ridgeland | 7.5 | 11 |
| Flora | 4.4 | 6.4 |
| Madison-Ridgeland | 10 | 10 |
| Luther Branson | 3 | 17.6 |
| East Flora | 5 | 31.6 |
| Velma Jackson | 2 | 42.4 |
| Business & Commerce | 3 | 5 |

Thus, in March 1970, when the Board determined not to rehire the plaintiffs, three of the seven schools in the system were still completely ·black. A year later, the school system was more, not less, segregated, since three schools were completely black and a fourth school had only one white and 455 blacks. At the time of the refusal to rehire, three of the schools were completely segregated with respect to teachers. Only the most minimal improvement was registered the following year, and even then none of the schools had achieved the faculty desegregation required earlier by this court's order.

It is equally clear that there was a reduction in the teaching force in the relevant time period. The teaching force in the 1969–70 school year numbered 231 (69 white, 162 black). In the 1970–71 school year, the number had declined to 214 (59 white, 155 black).[1] The number of white students and the total number of students in the system also declined over the year.

■ We are unable to comprehend the suggestion in the district court's opinion and now urged upon this court by the Board that the school system became a unitary system the moment our decree was to become effective, December 31, 1969. If the journey from *Brown* to *Swann* and beyond has taught us anything, it is that integration does not occur merely when and because we say it should. The journey has been necessary because we have been con-

1. Only black teachers were refused rehiring. The decrease in white teachers is attributable to teacher resignations.

cerned with conduct and action, not words. *See* Sparks v. Griffin, 5th Cir. 1972, 460 F.2d 433. We have only recently reiterated that *Singleton* is rendered inapplicable only when "full compliance with the desegregation directives of this Court" is achieved. McLaurin v. Columbia Municipal Separate School District, 5th Cir. 1973, 478 F.2d 348, 352. As we said earlier, we remanded originally because we did not have record evidence on the question of "whether the Madison County School District is *still in the process of implementing the desegregation orders of this Court or whether desegregation has already been completely achieved.*" Thompson v. Madison County Board of Education, supra, 476 F.2d at 678. We certainly did not need to remand the case if all that remained to be determined was the date on which the schools began to desegregate.

■ The district court concluded that while some of the schools might not appear to be integrated, nevertheless in fact they were, at least insofar as the teachers were concerned:

> Desegregation to any degree of mathematical exactitude as to the student phase of this *Singleton* order in some schools may be autistic in character, but completed and accomplished as to the faculty aspect or stage of this order . . .

To be sure, we recognize that "the existence of some small number of one-race, or virtually one-race, schools within a district is not in and of itself the mark of a system that still practices segregation by law." Swann v. Charlotte-Mecklenburg Board of Education, 1971, 402 U.S. 1, 91 S.Ct. 1267, 1281, 28 L.Ed.2d 554, "What is or is not a segregated school will necessarily depend on the facts of each particular case." Keyes v. School District No. 1, Denver, Colo., 1973, 413 U.S. 189, 93 S.Ct. 2686, 2691, 37 L.Ed.2d 548.

> [B]ut in a system with a history of segregation the need for remedial criteria of sufficient specificity to assure

a school authority's compliance with its constitutional duty warrants a presumption against schools that are substantially disproportionate in their racial composition . . . The court should scrutinize such schools, and the burden upon the school authorities will be to satisfy the court that their racial composition is not the result of present or past discriminatory action on their part.

Swann v. Charlotte-Mecklenburg Board of Education, supra, 91 S.Ct. at 1281. The facts of this case indicate to us that the district court clearly erred in concluding that the school system had fully desegregated in either faculty or students at the time of the refusal to rehire the plaintiffs. We think it particularly significant that the all-black schools contained 3,064 of the 3,522 black students in the district, or roughly 87% of all black students. Furthermore, this court entered orders subsequent to the December 31, 1969, order in a continuing attempt to achieve maximum integration. While those orders may have been complied with, nevertheless when these teachers were refused rehiring, desegregation of the schools in both faculty and students was still in the process of implementation.

■ The district court also found, and the school board has forcefully contended, that the refusals to rehire were not actually *caused* by the court-ordered desegregation. In its brief, the school board reasons as follows:

> . . . In implementing desegregation in the Madison County School District, there were no dismissals or reduction in the number of teachers.
>
> \*  \*  \*  \*  \*  \*
>
> . . . In the case at bar, the plaintiffs were not re-employed for the ensuing school year for specific reasons which occurred after desegregation and which were in no way related to reduction of the number of teachers
>
> . . .

First, we have already concluded that the desegregation had not been completed at the time plaintiffs were refused rehiring. Secondly, as we said in McLaurin v. Columbia Municipal Separate School District, supra, "we are not at all persuaded that each plaintiff was denied employment for the 1970–1971 academic year for valid, objective, nonracial reasons." Both plaintiffs had numerous years of teaching experience, and neither the district court nor the defendants concluded that the plaintiffs were not objectively qualified for re-employment. They were refused rehiring only two months after the desegregation order became operative. "It is difficult to believe that the District's level of tolerance of the plaintiffs' alleged deficiencies in the performance of their duties was coincidentally reached and exceeded during the period meaningful desegregation was being achieved." McLaurin v. Columbia Municipal Separate School District, supra. We reject the school board's argument and the district court's suggestion that plaintiffs' loss of their teaching positions was not a result of the Board's actions in implementing the court-ordered desegregation. Once it has been demonstrated that a reduction in faculty has occurred before full compliance with the desegregation direction of this court has been achieved, Singleton is applicable.

### Dismissals for Cause

■ Having concluded that the school board's refusals to rehire the plaintiffs had virtually nothing to do with court-ordered desegregation and that the required unitary school system had become a reality December 31, 1969, before the refusals to rehire, the district court found that the teachers had been refused rehiring for "just and proper cause outside the sweep of Singleton criteria." Since the district court's premises were faulty, its conclusion missed the mark. Singleton was applicable. The required desegregation had not become a reality at the time plaintiffs' contracts were not renewed. There was a reduction in faculty between the two school years involved. Thus, what we said in the first appeal of this case is dispositive here:

[A]ssuming that Singleton does apply, the district court's conclusion that there was "just cause" for Sutton and Thomas not being rehired appears to be erroneously based on a subjective comparison of the plaintiffs' proficiency in the classroom with the performance of other teachers in the school district. We recognize that under certain circumstances, Singleton notwithstanding, discharges on the basis of "just cause" may be warranted without reference to the school board's pre-established objective and reasonable standards. However, "just cause" in a Singleton situation does not refer to a teacher's lack of professional credentials, his poor performance in the classroom, his failure to abide by school regulations, his lack of cooperation, or other similar explanations. These types of reasons for discharge fall directly within the scope of Singleton, and accordingly such discharges must be justified on the basis of objective and reasonable standards for dismissal previously set by the school board. If this kind of a discharge can be justified in terms of the established objective standards, it is not for "just cause"; it is simply a discharge in compliance with Singleton criteria. "Just cause" in a Singleton situation means types of conduct that are repulsive to the minimum standards of decency—such as honesty and integrity—required by virtually all employers of their employees, and especially required of public servants such as school teachers. No pre-established objective criteria are necessary to justify the discharge of a teacher whose conduct does not measure up to these minimum standards of behavior.

Thompson v. Madison County Board of Education, supra, 476 F.2d at 678–679. It is undisputed that the plaintiffs' conduct never reached so low as to fall within the range of behavior set out in

*Thompson* justifying a refusal to rehire without regard to objective standards. The unavoidable conclusion is that the plaintiffs were improperly refused rehiring and are entitled to reinstatement.

## Back Pay Awards

■ Because we have decided that the plaintiffs were improperly denied re-employment by the Madison County School Board for the 1970–71 school year, we must now inquire into their eligibility for awards of back pay. At the time of their discharge, Sutton was making $5,600 per year and Thomas was making $5,200 per year. Both plaintiffs sought and secured interim employment. Sutton has evidently been employed at a teaching job in Michigan which pays more than twice the salary he was paid by the Madison County School Board.

While this case was pending on appeal, the Supreme Court decided the case of Edelman v. Jordan, 1974, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662. The Court there held that under the eleventh amendment, the judicial power of the federal courts did not extend to a suit which sought to recover certain statutory monetary benefits which had been wrongfully withheld by the state of Illinois, and therefore reversed a portion of a Court of Appeals decision affirming a district court's order that retroactive benefits be paid by the Illinois state officials. The parties to this suit have not had an opportunity to brief or argue the question of *Edelman's* applicability to the back pay issue. Consequently, we remand the case to the district court for findings and conclusions on this issue. We express no opinion as to whether the Madison County Board of Education is entitled to invoke the eleventh amendment, *see* Moor v. County of Alameda, 1973, 411 U.S. 693, 93 S.Ct. 1785, 36 L. Ed.2d 596; Edelman v. Jordan, supra,

94 S.Ct. at 1358, n. 12; or whether, if it is determined that the Madison County Board of Education is a state defendant for purposes of the eleventh amendment, an award of back pay would conflict with the *Edelman* holding.[2]

## Plaintiffs' Entitlement to Attorneys' Fees

■ The district court denied the plaintiffs' an award for attorney's fees with the following explanation:

No proof was adduced as to attorney's fees, but the Court knows judicially from other like cases here that original counsel and present counsel are employed by a subsidized agency from which they received regular salaries. Their employers are not lawyers and are not authorized, or qualified to contract for or receive legal fees, and no assignments were shown the Court. The record does not show that the plaintiffs incurred any obligation for legal fees which they are legally bound to pay; and any allowance therefor will be denied.

Recently, we have explicitly held that these are wholly impermissible reasons for denying an award of attorney's fees or expenses. Fairley v. Patterson, 5th Cir. 1974, 493 F.2d 598. "This Court has indicated on several occasions that allowable fees and expenses may not be reduced because appellants' attorney was employed or funded by a civil rights organization and/or tax exempt foundation or because the attorney does not exact a fee." Fairley v. Patterson, supra. And we have on numerous occasions either awarded attorney's fees or approved such an award by the district court where public interest litigation was involved. *See* Fairley v. Patterson, supra, and cases cited therein.

■ Appellants argue that § 718 of the Emergency School Aid Act of 1972,

2. As a part of the reinstatement remedy, Sutton has also requested that he be reimbursed for his moving expenses in relocating in Michigan and the expense of returning to Mississippi should he accept reinstatement. Armstead v. Starkville Municipal Separate School District, N.D.Miss.1971, 325 F.Supp. 560, 571, aff'd in relevant part, rev'd in part, 5th Cir. 1972, 461 F.2d 276. *Edelman's* applicability to this element of requested relief should also be explored on remand.

20 U.S.C. § 1617 (Supp.1973),[3] mandates an award of attorney's fees in this case. Under that statute, upon "the entry of a final order," and upon "a finding that the proceedings were necessary to bring about compliance," plaintiffs are entitled to an award for attorney's fees "unless special circumstances render such an award unjust." Henry v. Clarksdale Municipal Separate School District, 5th Cir. 1973, 480 F.2d 583; Northcross v. Memphis Board of Education, 1973, 412 U.S. 427, 93 S.Ct. 2201, 37 L.Ed.2d 48; Newman v. Piggie Park Enterprises, Inc., 1968, 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263.

In Johnson v. Combs, 5th Cir. 1972, 471 F.2d 84, 86-87, we held that the statute is not to be applied retroactively "to the expenses incurred during the years of litigation prior to its enactment." The Supreme Court on May 15, 1974, expressly rejected this holding by concluding that the statute is applicable to litigation predating, but pending on appeal on, the effective date of the statute unless the award would cause "manifest injustice." Bradley v. School Board of City of Richmond, 1974, —— U.S. ——, 94 S.Ct. 2006, 40 L.Ed.2d 476. Since the school board has failed to cite any special circumstances, and since it is undisputed that these proceedings were necessary to bring about compliance with the law, the district court,

upon the entry of a final order in this case, is directed to grant appellants' request for reasonable attorney's fees for services rendered from the first district court hearing through this appeal.[4] Johnson v. Georgia Highway Express, Inc., 5th Cir. 1974, 488 F.2d 714.

Conclusion

In many ways, this case is quite similar to McLaurin v. Columbia Municipal Separate School District, supra, 478 F. 2d 348.[5] The Columbia School District was a codefendant, along with the Madison County Board of Education, in the protracted Hinds County School Board litigation, which ended when we directed the defendant school districts to operate unitary educational systems no later than December 31, 1969. United States v. Hinds County School Board, supra, 423 F.2d 1264; Alexander v. Holmes County Board of Education, 1969, 396 U.S. 19, 90 S.Ct. 29, 24 L.Ed.2d 19. In *McLaurin,* we discovered that the required desegregation "was not effectuated until the start of the 1970–1971 school year." 478 F.2d at 350. When several black teachers were notified in March 1970 that their contracts would not be renewed, they brought suit seeking the same relief which the plaintiffs have sought here. We reversed the district court's holding that *Singleton* was inapplicable when we discovered (1)

3. The statute provides:
   Upon the entry of a final order by a court of the United States against a local educational agency, a State (or any agency thereof), or the United States (or any agency thereof), for failure to comply with any provision of this chapter or for discrimination on the basis of race, color, or national origin in violation of Title VI of the Civil Rights Act of 964, or the fourteenth amendment to the Constitution of the United States as they pertain to elementary and secondary education, the court, in its discretion, upon a finding that the proceedings were necessary to bring about compliance, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

4. Accordingly, we need not consider appellants' alternative contention that attorney's

fees should be awarded under the "private attorney general theory," Fairley v. Patterson, supra, or under the theory that the school board has acted in an "unreasonable and obdurately obstinate" manner, Henry v. Clarksdale Municipal Separate School District, supra.

5. Some confusion over the factual setting in *McLaurin* led this court to order that the case be reheard en banc. Briefs and oral argument on rehearing led the en banc court to conclude that the case was not enbancworthy. Consequently, the en banc court was dissolved, and the panel opinion stands as the opinion of the court. *See* McLaurin v. Columbia Municipal Separate School District, 5th Cir. 1973, 486 F.2d 1049, dissolving the en banc court.

that full compliance with the desegregation directives of this Court had not been achieved until the start of the 1970–1971 school year, and (2) that there had been in fact a reduction in the number of teaching personnel between the 1969–1970 school year and the 1970–1971 school year. Since the school district had not adopted objective, nonracial *Singleton* criteria, and since the teachers had not been discharged for the kind of conduct set out in Thompson v. Madison County Board of Education, supra, we held that the teachers were denied equal protection of the law under the fourteenth amendment and thus entitled to relief. The school board has not attempted to distinguish *McLaurin* here. That case furnishes ample precedent for our disposition.

Reversed and remanded with directions.