Rebecca E. **HENRY** et al.,
Plaintiffs-Appellants,

v.

**CLARKSDALE MUNICIPAL SEPARATE SCHOOL DISTRICT** et al.,
Defendants-Appellees.

No. 76–1207.

United States Court of Appeals,
Fifth Circuit.

Sept. 7, 1978.

Melvyn R. Leventhal, Jack Greenberg, New York City, David Norman, Asst. Atty. Gen., Civ. Rights Div., U.S. Dept. of Justice, Washington, D.C., for plaintiffs-appellants.

Semmes Luckett, Clarksdale, Miss., for defendants-appellees.

Before COLEMAN, TJOFLAT, and FAY, Circuit Judges.

PER CURIAM:

This is the fifth time this case has been before the Court in some form.[1] In 1964, the plaintiffs initially filed suit, seeking the elimination of racial segregation in the Clarksdale Municipal Separate School District, being the first desegregation case filed in the Northern District of Mississippi. The School District proposed to eliminate school segregation by dividing the district into attendance zones. At the time, this was a unique proposal for a Mississippi school district, for most districts were urging the acceptance of "freedom of choice" plans. The first three appeals were concerned with substantive issues determining the type desegregation plan to be implemented. In the fourth appeal we addressed the issue of providing bus transportation for children. Now, we are compelled to decide whether certain attorneys fees are due the plaintiffs.

Throughout the early history of this litigation, the plaintiffs made no mention of

---

1. *Henry v. Clarksdale Municipal Separate School District*, 5 Cir. 1969, 409 F.2d 682, *cert. denied*, 396 U.S. 940, 90 S.Ct. 375, 24 L.Ed.2d 242 (*Clarksdale I*); *Henry v. Clarksdale Municipal Separate School District*, 5 Cir. 1970, 425 F.2d 698 (*Clarksdale II*); *Henry v. Clarksdale Municipal Separate School District*, 5 Cir. 1970, 433 F.2d 387 (*Clarksdale III*); and *Henry v. Clarksdale Municipal Separate School District*, 5 Cir. 1973, 480 F.2d 583 (*Clarksdale IV*).

attorneys fees. Further, no time records were kept of attorney hours expended. The first request for fees was not tendered until the last appeal. We then ordered:

> [T]he district court upon the entry of a final order in this case, is directed to grant appellees' request for reasonable attorneys' fees incurred since July 1, 1972. The district court shall also grant a hearing to determine whether or not the appellants' actions were carried out in an "unreasonable and obdurately obstinate" manner in the years preceding July 1, 1972, so as to entitle appellees to be awarded reasonable attorneys' fees for services before that date.

*Henry v. Clarksdale Municipal Separate School District,* 5 Cir. 1973, 480 F.2d 583, 585–86 (*Clarksdale IV*). The District Court assessed fees for post-July 1, 1972, legal services, and those fees have been paid.

■ The plaintiffs argued that they are also entitled to fees for efforts prior to July 1, 1972, because the defendants had acted unreasonably and stubbornly throughout the entire litigation. The District Court [Judge Keady] disagreed. Rather, it found as a fact that the defendants had not acted in an "unreasonable and obdurately obstinate" manner during the course of desegregation. Such a finding of fact may be overturned only if the record reveals that the finding was clearly erroneous. Rule 52, F.R.Civ.P. Our appraisal of the record shows that the District Court had ample reasons to support his finding. Thus no fees were due the plaintiffs for litigation before July 1, 1972, judged by the standard established in our order reported at 480 F.2d 585–86.

■ Plaintiffs urge, however, that attorneys fees for services rendered during the entire litigation should be awarded pursuant to Section 718 of the Education Amendments Act of 1972, 20 U.S.C.A. § 1617.[2] Plaintiffs say that because the case was *pending* before the District Court at the time § 718 was passed, fees should be awarded retroactively to the beginning of the litigation. *Bradley v. School Board of City of Richmond,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974).

At the time § 718 was enacted, all definitive or substantive orders of this Court and the District Court for desegregating the Clarksdale public schools as to students, faculty, staff, and services had been entered and were being complied with. There were no pending appeals of any sort. Moreover, when § 718 was enacted, no motion had been filed for attorneys fees which had not been disposed of, nor had such a claim ever been made. The only District Court order after the passage of § 718 was to require that bus transportation be provided· by the School District, pursuant to plaintiffs' motion. No active issues were present before the motion for bus transportation. The question presented to us is whether a supplemental motion, filed many months after all other issues had been decided and no appealable orders remained, reopens the entire litigation for the purpose of allowing attorneys fees under § 718. We believe that it does not.

In *Bradley v. School District of City of Richmond, supra,* the Supreme Court held that § 718 was applicable to litigation predating, but pending on appeal on, the effective date of the statute unless the award would cause "manifest injustice". *Thompson v. Madison County Board of Education,* 5 Cir. 1974, 496 F.2d 682, 690. The opinion further stated that the language of § 718 gives implicit support for applying it to all pending cases. *Bradley v. School District*

---

2. That statute provides:

   Upon the entry of a final order by a court of the United States against a local educational agency, a state (or any agency thereof), or the United States (or any agency thereof), for failure to comply with any provision of this chapter or for discrimination on the basis of race, color, or national origin in violation of Title VI of the Civil Rights Act of 1964, or the Fourteenth Amendment to the Constitution of the United States, as they pertain to elementary and secondary education, the Court, in its discretion, upon a finding that the proceedings were necessary to bring about compliance, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the cost.

*of City of Richmond, supra,* 416 U.S. at 716, 94 S.Ct. at 2018. To apply § 718 retroactively, a case must have an "active" issue pending on the date of its enactment, see *Rainey v. Jackson State College,* 5 Cir. 1977, 551 F.2d 672, 676.

Since most school cases involve relief of an injunctive nature, district courts will maintain jurisdiction long after determining the issues in controversy. "The ultimate approach to finality must be an individual and pragmatic one. Such a matter should be committed to the determination of the trial court." *Johnson v. Combs,* 5 Cir. 1972, 471 F.2d 84, 87.

As we read it, the District Court held that the issues of the original desegregation suit, filed in 1964, had been finally adjudicated before § 718 was passed. In other words, no active issue was pending.

We believe that *Bradley,* correctly read, requires the existence of an issue actively pending in the District Court, or unsettled on appeal, when § 718 took effect if that legislation is to operate retroactively.

The present motion for attorneys fees was not filed until January 10, 1975, followed by a more formally constructed motion in October. This did not, in our opinion, reactivate the whole case, from the beginning, so as to justify retroactive application of § 718.

If, however, we are mistaken in this, there is yet another factor to consider. Judge Keady found that "it would be most unjust and inequitable to assess the Board with liability for legal services from 1964 to the Fifth Circuit's initial ruling in 1969".

He further found, "We are not persuaded that at this late date there is a reliable factual basis for allowing counsel fees for services remotely rendered".

He went on to say, "[I]t would be manifestly unjust to allow any sum for legal services asserted by Professor Bell".

He concluded, "Hence, we feel very strongly that in the 1964–69 period it would be improper to assess the school board with plaintiff's counsel fees".

In and of itself, this disposes, correctly, we think, of any claim for attorneys' fees prior to 1969.

This leaves only the matter of fees, claimed by Mr. Leventhal, from 1969 to July 1, 1972. If such fees were allowable, the Court found that they should be fixed at the sum of $8,500. He did not find that it would be unjust or inequitable to order the payment of this fee. Its denial rests upon the original premise, first discussed *ante.* It necessarily follows that in any event the Clarksdale Municipal Separate School District should not be liable for more than $8,500 and this sum would be due Mr. Leventhal.

Judge Keady's resume of this litigation, together with his reasoning that the plaintiffs were not entitled to attorneys' fees prior to 1972, deserve to be annexed to this opinion, which will be done.

The judgment of the District Court is AFFIRMED.

TJOFLAT, Circuit Judge, dissenting:

Because I believe the issue whether attorneys' fees ought to be awarded for the years prior to July 1, 1972, to be foreclosed by our opinion in *Clarksdale IV,* I respectfully dissent. I can well understand the school district's continued resistance to being taxed at this late date with attorneys' fees all the way back to 1964, when this school case began, but such a concern cannot deter us from enforcing the mandate of *Clarksdale IV.*

As is recounted in the majority opinion, the attorneys' fees issue first surfaced during the appellate consideration of *Clarksdale IV.* The *Clarksdale IV* panel, following the teaching of *Johnson v. Combs,* 471 F.2d 84 (5th Cir. 1972), *cert. denied,* 413 U.S. 922, 93 S.Ct. 3063, 37 L.Ed.2d 1044 (1973), held that section 718, 20 U.S.C. § 1617 (1976), did not sanction the award of fees generated before the effective date of the section, July 1, 1972. Thus, in remanding the issue to the district court, the panel directed that it "grant appellees' request for reasonable attorneys' fees incurred since

July 1, 1972." *Clarksdale IV*, 480 F.2d at 585. With respect to whether fees should be awarded for services rendered prior to that date, the district court was directed "to determine whether or not the appellants' actions in this lawsuit were carried out in an 'unreasonable and obdurately obstinate' manner in the years preceding July 1, 1972." *Id.* at 585–86.

After the panel's opinion in *Clarksdale IV*, but before the district court's hearing on the attorneys' fees issue, the Supreme Court handed down its decision in *Bradley v. School Board of Richmond*, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974). *Bradley* explicitly rejected the approach this circuit followed in *Johnson* and *Clarksdale IV*; section 718 authorizes a district court to award fees incurred prior to July 1, 1972.

In my judgment, the *Clarksdale IV* opinion clearly mandates the award of the attorneys' fees for pre-July 1, 1972, services. Under section 718 the presumption is that fees will be awarded to a successful plaintiff. *See Northcross v. Board of Education of Memphis*, 412 U.S. 427, 93 S.Ct. 2201, 2202, 37 L.Ed.2d 48 (1973). The July 1, 1972, date used by the *Clarksdale IV* panel obviously was in reliance upon the then existing law of this circuit. 480 F.2d at 585. The Supreme Court's supervening opinion in *Bradley* merely eliminates the requirement that a plaintiff show "unreasonable and obdurately obstinate" behavior on the part of the school board before attorneys' fees can be awarded. Under the doctrine of "law of the case," we should not depart from the determination made in the earlier appeal in this case that the plaintiffs ought to be awarded attorneys' fees. *See, e. g., Lincoln National Life Insurance Co. v. Roosth*, 306 F.2d 110 (5th Cir. 1962), *cert. denied*, 372 U.S. 912, 83 S.Ct. 726, 9 L.Ed.2d 720 (1963).

Even if we were to ignore the mandate of *Clarksdale IV* and the law of the case doctrine, I would disagree with the majority's determination that the *Clarksdale* case was not "pending" within the meaning of *Bradley* at the time of the effective date of section 718. In *Bradley*, a finding that the school district was unified prior to the effective date of section 718[1] did not bar the application of the section to the attorneys' fees award. As this court stated in *Rainey v. Jackson State College*, 551 F.2d 672, 676 (5th Cir. 1977),

> In *Bradley*, the Court authorized an award of attorneys' fees to plaintiffs in a school desegregation case under § 718 of the Education Acts Amendments of 1972, 20 U.S.C. § 1617, even though (a) there were no pending or appealable orders in the case except for attorneys' fees, and (b) § 718 had not been enacted until after initial submission of the case to the Court of Appeals.

In my view, it follows that section 718 controls the awarding of attorneys' fees in a proceeding where the underlying desegregation action itself has not come to a successful completion, that is, when the school district has not been adjudged unified. In that event, an award can be made for the entire course of a pending action upon the entry of a final order by the court.

The majority, however, has found that the Clarksdale school desegregation litigation had, in effect, come to a halt prior to the statute's enactment and the initial request for fees. After a review of the complex proceedings of this case, I disagree with the characterization placed upon them by the majority. I think it clear that the entire litigation was still active or "pending" when the attorneys' fees were requested.[2] As a result, section 718 allows an

---

1. *See Bradley v. School Bd. of Richmond*, 462 F.2d 1058, 1061, 1069 (4th Cir. 1972) (en banc), *aff'd by an equally divided court*, 412 U.S. 92, 93 S.Ct. 1952, 36 L.Ed.2d 771 (1973).

2. The Supreme Court in *Bradley* recognized that many final orders may issue in the course of a particular school case. It thus allowed more than one fee award to be granted

throughout the litigation. 94 S.Ct. at 2021–22. The Court also recognized that in some cases it would "be undesirable to delay the implementation of a desegregation plan in order to resolve the question of fees simultaneously." *Id.* at 2022. This certainly does not mean, however, that attorneys *must* seek fees in a piecemeal fashion. Section 718 certainly allows them to wait until the conclusion of the case.

award for fees incurred since the Clarksdale school litigation began.

This court has made it abundantly clear in the past that a school system is not automatically desegregated when a constitutionally acceptable plan is adopted and implemented. "If the journey from *Brown* to *Swann* and beyond has taught us anything, it is that integration does not occur merely when and because we say it should. The journey has been necessary because we have been concerned with conduct and action, not words." *Thompson v. Madison County Board of Education*, 496 F.2d 682, 686–87 (5th Cir. 1974) (citing *Sparks v. Griffin*, 460 F.2d 433 (5th Cir. 1972)). To guarantee that systems become unitary under acceptable plans, this court has required district courts to retain jurisdiction to receive periodic progress reports. *E. g., Youngblood v. Board of Public Instruction of Bay County*, 448 F.2d 770 (5th Cir. 1971); *Wright v. Board of Public Instruction of Alachua County*, 445 F.2d 1397 (5th Cir. 1971); *United States v. Hinds County School Board*, 433 F.2d 611 (5th Cir. 1970).

Such was the case in the *Clarksdale* litigation. An acceptable plan was finally adopted in 1970. This court expressly stated in *Clarksdale III* that "the district court may proceed to consider alterations and amendments to [the plan], to the extent that they represent forward, not backward steps." 433 F.2d 387, 392 (5th Cir. 1970). Supplemental relief was needed, however, for the plan to be effective.

Several orders were entered by the district court in the time between the issuance of the mandate in *Clarksdale III* and the filing of the motion that served as the basis of *Clarksdale IV*.[3] The plaintiffs asserted their right to free transportation and prevailed in both the district court and on appeal in *Clarksdale IV*. See also *Brewer v. School Board of Norfolk*, 456 F.2d 943 (4th Cir.), *cert. denied*, 406 U.S. 933, 92 S.Ct. 1778, 32 L.Ed.2d 136 (1972). *Clarksdale IV* also affirmed the district court's denial of a request by the defendants that the desegregation plan be altered to minimize the transportation requirements. The panel agreed with the district court that the defendants' proposal would cause resegregation. Therefore, it is clear that the supplemental relief sought by the plaintiffs was not a sham or ruse calculated to reopen or "reactivate" the litigation for counsel fee purposes. The opinion in *Clarksdale IV* demonstrated that this was still another step on the journey toward a unitary school system.[4]

The Fourth Circuit Court of Appeals has been presented with a situation almost identical to that confronting us here. In *Brewer v. School Board of Norfolk*, 456 F.2d 943 (4th Cir.), *cert. denied*, 406 U.S. 933, 92 S.Ct. 1778, 32 L.Ed.2d 136 (1972), the plaintiffs attained free bus transportation for students needing it under a court-ordered desegregation plan. The Fourth Circuit utilized an equitable theory to affirm an allowance of counsel fees generated on the transportation issue. After remand the plaintiffs appealed from what they alleged to be an inadequate award. After the initial appellate decision, section 718 was en-

---

3. On January 25, 1971, the district court ordered that periodic reports on the continued effectiveness of the desegregation order be filed. The report of December 1, 1975, demonstrated that the situation is still far from ideal. Among the seven Clarksdale elementary schools, 80% of the black children attended four schools in which only 8% of the white children are enrolled. On May 27, 1971, the plaintiffs obtained an order mandating faculty desegregation. On April 3, 1972, they successfully urged the district court to restrain the school board from purchasing a certain parcel of land.

4. This case, therefore, is unlike *Scott v. Winston-Salem/Forsyth Cty. Board of Educ.*, 400 F.Supp. 65 (M.D.N.C.1974), *aff'd without opinion*, 530 F.2d 969 (4th Cir. 1975), where the motion for attorneys' fees was not attached to any continuing substantive litigation. We have indicated in *Davis v. Bd. of School Comm'rs*, 526 F.2d 865, 869 (5th Cir. 1976), that even school cases must eventually end. I note that in *Davis*, although the litigation of student and faculty desegregation issues ended with the entry of a consent decree in 1971, § 718 was still applied with respect to the attorneys' fees issue. Moreover, the *Clarksdale* litigation had not ended when the motion for attorneys' fees was filed.

acted and *Bradley* was handed down. In the subsequent appeal, *Brewer v. School Board of Norfolk*, 500 F.2d 1129 (4th Cir. 1974) (en banc), the Fourth Circuit remanded again, stating, "As construed in *Bradley*, it now appears that § 718 provides a vehicle for an award of fees for the plaintiffs' attorneys for services rendered without limitation to what they did with respect to the issue of free transportation." 500 F.2d at 1130.

I further note that this case comes within the spirit of *Bradley*. The plaintiffs here have "rendered substantial service both to the Board itself, by bringing it into compliance with its constitutional mandate, and to the community at large by securing for it the benefits assumed to flow from a nondiscriminatory educational system." 94 S.Ct. at 2019–20.

For the foregoing reasons, I must dissent.

## APPENDIX

THE COURT:

This case is today before the Court on remand from the Court of Appeals directing the district court to grant the request of the private plaintiffs' counsel for reasonable attorney fees incurred since July 1, 1972, and also to determine whether the school board's actions, in the conduct of the lawsuit prior to July 1, 1972, were unreasonable and obdurately obstinate, and, if so, also to make an award for legal services rendered during that period of time. Affidavits and counter-affidavits addressing the issues have been submitted. In addition, the Court is familiar with its own record and files in the case.

The evidence indicates that from the beginning of this school desegregation suit, in 1964, private plaintiffs were represented by various attorneys associated with the NAACP Legal Defense & Educational Fund. The same attorneys had far-ranging professional responsibilities in connection with public school desegregation suits in many cities and towns, in both Mississippi and elsewhere in the South. Derrick A. Bell, Jr., now a professor of law at Harvard Law School, along with other counsel, assisted in the original prosecution of the Clarksdale school case; in June 1964 he appeared before District Judge Claude F. Clayton and obtained a preliminary injunction requiring the school board's submission of a student assignment plan without regard to race. In response to that order, the board produced a zoning attendance plan which, after some alteration, received the Court's approval, and was ordered to be placed into effect. It is worthy of note that Clarksdale eschewed a plan based upon freedom of choice, though that method was then prevalent and judicially countenanced. Instead, the board opted for city-wide zoning plan applicable to all students in all twelve grades. The plaintiffs, dissatisfied with the plan approved by the district court, took an appeal to the Fifth Circuit.

Thereafter, the Court of Appeals held the case for about three years before rendering a decision in March 1969. *Henry v. Clarksdale Municipal Separate School District*, 5 Cir., 409 F.2d 682 (*Clarksdale I*). In this decision the Court held that a finding by the district court that the school board had acted in good faith in drawing attendance lines on a nonracial basis did not discharge the board's affirmative duty to liquidate the dual system of schools. Finding that the board's plan to disestablish one-race schools had failed, the Fifth Circuit remanded the case "for a hearing to determine the effectiveness of the Clarksdale plan in today's factual setting and in the light of *Green* [*v. School Board of New Kent County*, 391 U.S. 430, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968)] and other decisions of the Supreme Court and of this Court." The Fifth Circuit observed that a long time had elapsed since the trial of the case in the district court, partly because of the Fifth Circuit's delaying its decision in order "to obtain further enlightenment from the Supreme Court on the subject of attendance zones plans as against freedom of choice plans." To comport with *Green*'s requirements, the Fifth Circuit was of the opinion that the school board should consider redrawing attendance-zone boundaries, incorporating a majority-to-minority transfer

provision in its plan, closing all-Negro schools, consolidating and pairing schools, rotating principals and taking other measures to overcome the defects of the plan. The case was remanded to the district court for entry of a judgment consistent with that opinion.

The school board sought certiorari from the Supreme Court of the United States, which was denied on November 24, 1969. 396 U.S. 940, 90 S.Ct. 375, 24 L.Ed.2d 242. The district court then directed the school board to confer with Department of HEW regarding the adoption of a new desegregation plan. In December 1969 HEW representatives came to Clarksdale, made a survey of the schools and conferred with local school officials. The local school officials sought, without success, to interest HEW in a desegregation plan based upon geographic zoning designed to promote greater desegregation. These conferences between HEW and the local school officials proved to be abortive. Thereafter HEW filed a report with the Court recommending the consolidation of the two senior high schools into one senior high school, the consolidation of the three junior high schools into one junior high school, the pairing of five elementary grades on varying grade levels and leaving unaffected one six-grade elementary school, Booker T. Washington. The school board objected to the HEW plan in its entirety, while plaintiffs objected on the ground that Booker T. Washington was allowed to remain as an all-black school. The school board maintained the position that its zoning plan had been based upon genuine geographic zoning without right of transfer and legally resulted in a unitary school system, and that the ensuing segregation was de facto, and not de jure, segregation caused by refusal of white people to attend the schools to which they were assigned, a result the board insisted was wholly beyond its control and which should not affect the validity of its plan.

On January 9, 1970, the district court conducted an evidentiary hearing on the adequacy of the school board's zoning plan, the HEW plan and objections thereto. Disapproving both the board's plan and the HEW plan, the Court ordered consolidation of the upper five grades, effective for the next semester commencing in February 1970. While accepting HEW's concept as a single senior high school and a single junior high school, the Court rejected the HEW proposals for making a four-grade senior high school out of the formerly all-black Higgins Junior-Senior High School and the nearby Oliver Elementary School. Instead, the Court structured a three-grade high school to utilize the buildings occupied by the formerly all-white Clarksdale junior and senior high schools. Contrary to HEW's recommendations, the Court, provisionally, structured a two-grade junior high school (eight and nine) to occupy the formerly black Higgins Junior and Senior High School, including the Oliver Elementary building. HEW recommendations for pairing the elementary schools were rejected; and the Court, while withholding an immediate order with respect to altering the elementary schools, appointed a special master to confer with a biracial committee and make a report of a new desegregation plan, to become effective in September 1970. The order of reference, entered January 10, 1970, directed the filing of a report by the special master not later than March 10, 1970.

Both the private plaintiffs and the school board took separate appeals from the district court's order of January 10. On April 15, the Fifth Circuit, in *Henry v. Clarksdale Municipal Separate School District,* 425 F.2d 698 (*Clarksdale II*) entered an order deferring disposition of plaintiffs' motion for summary reversal and of the appeal and cross-appeal by the school board and directed the district court, within thirty days to (1) conduct a hearing upon the special master's report and exceptions; (2) make and file findings of fact and conclusions of law; and (3) file supplemental record in the Court of Appeals. During the limited remand, jurisdiction of the appeal and cross-appeal was expressly retained by the Fifth Circuit.

The master's report, when filed, called for a city-wide three-grade high school, uti-

lizing the above mentioned buildings, a city-wide two-grade high school assigned to the Higgins campus, a city-wide seventh-grade school assigned to the Riverton Intermediate School and seven elementary schools retained to serve the first six grades, with pupils to attend schools nearest their residence regardless of zoning, present or previous racial enrollment of the school. The master's report was objected to by the plaintiffs, as well as the school board. Plaintiffs objected on the ground that the master's plan failed to desegregate the elementary schools and departed from the secondary school organization which HEW had recommended. The school board objected because the master's plan ignored existing geographical zones providing for two senior high school districts, three junior high school districts and four elementary school districts with sub-districts. By order dated May 8, 1970, the district court approved the special master's plan. At every stage all points were strenuously contested by the parties, both in this court and on appeal. The Fifth Circuit, by a divided panel, in *Henry v. Clarksdale Municipal Separate School District,* 433 F.2d 387 (1970) (*Clarksdale III*), reversed the district court's order with respect to the elementary schools as clearly erroneous and mandated that HEW's elementary school plan be placed into effect as of September 1970. The appellate court emphasized that "with this plan in operation, the district court may proceed to consider alternatives and amendments to it, to the extent that they represent forward, not backward steps." The district court's order respecting the upper six grades was affirmed. The cross-appeal of the school board from the Court's January 10, 1970, order was rejected. The HEW elementary school plan was immediately placed into effect by order of the district court.

In subsequent hearings, the district court ordered that the final plan of pupil assignment, beginning for the years 1971–72, and thereafter, would be as contained in its order of May 27, 1971, an order which was entered upon the plaintiffs' request for supplemental relief, which included specific ra-tions for biracial facilities at each school. The defendant school board, having lost all of its previous legal positions, did not object and acceded to the order. Thereafter, save for minor modifications not pertinent to the overall school operation, the Clarksdale school case did not remain active. Save in one particular, all of the district court's orders were carried out without further appeal by either side.

The sole exception to the entire litigation ending prior to July 1, 1972, arose in the context of a motion filed by the private plaintiffs to require the district to provide bus transportation for certain elementary students. This motion, which was filed on August 1, 1972, sought an order requiring the school board to transport all elementary students assigned to schools more than one mile from their residence. Defendants resisted the motion, arguing that bus transportation was not required under the circumstances. On August 25, the district court entered an order upholding the right of the plaintiffs to obtain bus transportation. The defendant board thereafter sought to re-assign its students in such manner as to minimize, if not eliminate, the necessity for busing, and this motion was rejected by the Court on October 3.

The school board then appealed to the Fifth Circuit, contending that late court decision had altered school busing requirements which had been established in the litigation affecting the Greenwood Municipal Separate School District. It was on that appeal, *Henry v. Clarksdale Municipal Separate School District,* 480 F.2d 583 (5 Cir. 1972) (*Clarksdale IV*), where the district court's order requiring bus transportation was affirmed, that the issue of attorney fees arose for the first time. Counsel for private plaintiffs sought an award of fees in the appellate court, although no request had ever been lodged with the district court. Whether a claim for attorney fees would have been made had the school board not seen fit to prosecute its unsuccessful appeal to the Fifth Circuit is, of course, a matter of speculation.

From the foregoing statement of the history of the Clarksdale school case, it may be readily observed that this litigation has been not only protracted but hard fought by both sides. Plaintiffs now seek to recover attorney fees in the sum of $30,260 as the reasonable value of legal services rendered to private plaintiffs from the inception of the litigation. Derrick A. Bell, Jr., who served as plaintiffs' counsel until April 1966, has submitted an affidavit estimating that during the period of his employment he devoted to the case at least 442 hours of service, for which a claim is made in the amount of $17,680 based on a charge of $40 per hour. From May 1969 to the present date, Melvyn R. Leventhal has been counsel for plaintiff. This attorney has submitted an itemized statement of $12,580 for his services, calculated at 252 hours of legal work billed at $40 per hour and 100 additional hours spent in conference and correspondence at $25 per hour. The Leventhal affidavit establishes that no more than 33 hours legal work have been expended on behalf of plaintiffs since the filing of the August 1, 1972, motion for student bus transportation.

Since the issue before the Court today is the determination of a counsel fee allowable to private plaintiffs, the primary question is to what extent the claims for attorney fees are authorized by, and come within the terms of, Section 718 of the Education Amendment Act of 1972, which was adopted June 23, 1972. That statute which now appears as 20 U.S.C., Section 1617, provides:

"Upon the entry of a final order by a court of the United States against a local educational agency, a state (or any agency thereof), or the United States (or any agency thereof), for failure to comply with any provision of this chapter or for discrimination on the basis of race, color, or national origin in violation of Title VI of the Civil Rights Act of 1964, or the Fourteenth Amendment to the Constitution of the United States, as they pertain to elementary and secondary education, the Court, in its discretion, upon a finding that the proceedings were necessary to bring about compliance, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the cost."

Although not emphasized, it is suggested by defense counsel that the Eleventh Amendment may bar an award of attorney fees against the Board of Trustees of Clarksdale Municipal School District, since it is an arm of the State of Mississippi. We summarily reject the Eleventh Amendment argument as here applicable. In our view, this municipal school district is not part of the state, for Eleventh Amendment purposes; it is no more than a local educational agency. The district's trustees are appointed by the governing authorities of the City of Clarksdale; the district has local taxing power, it may enter into contracts, sue and be sued, issue bonds and incur indebtedness to buy land, erect school buildings and make other capital improvements. True enough, the board receives from the state a substantial portion of its operating expenses to pay teachers' salaries and administrative costs, but it has lawful power to, and very probably does, supplement state funds by local taxation levied upon property situated within the separate school district. Under Mississippi law, a municipal separate school district cannot claim Eleventh Amendment immunity, or assert that any money judgment rendered against it is, in effect, a charge upon the state's treasury. That preliminary argument is therefore rejected.

The serious legal issue in the case is whether plaintiffs' claim for attorney fees from the beginning of the Clarksdale school litigation through the last appeal to the Fifth Circuit in June 1973, a period of nine years, does, in its entirety, come within the provisions of this Congressional Act. The statute states that an award of counsel fees is to be made by the Court, in its discretion, where the judicial proceedings were necessary to bring about compliance with the Fourteenth Amendment because of discrimination on the basis of race or color. Certainly, plaintiffs are to be regarded as the prevailing party, and the suit was necessary to bring about compliance with the Fourteenth Amendment in public school educa-

tion. As mandated by the Fifth Circuit, all legal services rendered from and after June 23, 1972, are certainly compensable under Section 1617. There are no circumstances which make such an allowance inequitable or improper. The difficulty with this statute is whether it should be construed to authorize payment of fees for services rendered long prior to its passage, in view of the particular circumstances here present.

At the time Section 1617 was enacted, all definitive or substantive orders of this Court and of the Fifth Circuit for desegregating the Clarksdale public schools as to students, faculty, staff and services had been entered, were being complied with, and there were pending no appeals of any sort. Moreover, at that time there had been filed no motion for attorney fees which was undisposed of, nor had a claim been made. The only development after June 23, 1972, was the filing by plaintiffs of the motion to obtain bus transportation rights which were ordered over the board's objections. Does the filing of a motion of that character, where all other aspects of the school litigation have been previously determined by final, unappealed orders, have the effect of re-activating the entire litigation for purposes of allowance of counsel fees under Section 1617? Counsel for plaintiffs argue that it does, relying upon the holding of the Supreme Court in *Bradley v. Richmond School Board,* 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476. Plaintiffs point out that in the *Bradley* case, the Fifth Circuit's interpretation that Section 1617 was not, in any case, retroactive was expressly rejected.

Defendants argue that the *Bradley* case should be limited by its facts, that in *Bradley* the question of allowing a fee was on appeal at the time of the passage of Section 1617, so that it was in direct review, and not adding to or making an attack upon a final judgment theretofore entered. Defendants urge that because nothing was pending in this case when Section 1617 was adopted, *Bradley* should not apply.

The parties present us with an interesting question of statutory construction. The Court is unwilling to subscribe to the proposition that Congress intended that so long as a school desegregation case remained pending on the docket of a federal district court plaintiffs could, almost at will, secure an allowance of all previously-incurred attorney fees, by merely filing a motion in the cause. Under such an interpretation, there would be no bar to school districts which have been successfully sued, in Mississippi or elsewhere in the nation, in public school desegregation cases, from being held liable for counsel fees incurred by plaintiffs, irrespective of when the case was substantially concluded.

In *Bradley,* we do not believe that the Supreme Court favored a broad interpretation of this statute so as to render public educational institutions liable for attorney fees for litigation long since concluded. If the opinion should not be entirely clear on this point, it is certain the court was merely considering rights of the parties in the setting of a direct appeal and where, in the process of appeal, a law change occurred which was immediately applicable to the appeal. Though unwilling to conclude that *Bradley* is limited to its particular facts, we do believe that *Bradley,* properly read, does require the existence of an action unresolved in the district court or unsettled on appeal when Section 1617 took effect, in order for it to operate retroactively.

Accepting that construction of the statute, this Court rules that no right was conferred by Section 1617 upon which to base an award for attorney fees incurred prior to its passage under the facts of this case, since all substantive school orders had been previously entered, were being complied with, and no appeals remained.

The post-July 1, 1972, motion for student transportation does not have such significance, in our opinion, as to re-activate the whole case for the purpose of attorney fee determination. If that motion were accorded such effect, it would be a very simple matter for plaintiffs to re-activate post-school desegregation cases on the filing of motions relating to the unlawful discharge of a single teacher, or a bus driver, or

racially-motivated discharge of students in disciplinary actions. Such incidents have allegedly happened at one time or another in the Clarksdale school operation, but it would be incredulous to hold that should a school board impermissibly discharge a single teacher or expel or otherwise discipline a student, who successfully sought relief in the school desegregation case, such proceedings impose upon the board liability for attorney fees under Section 1617 extending back many years to the commencement of the public school desegregation case. It should be noted that district courts are not allowed to remove school desegregation cases from the docket upon the entry of final orders but they must remain thereon until unitary schools are achieved.

I have considered how the Fifth Circuit construed *Bradley,* in *Thompson v. Madison County Board of Education,* 496 F.2d 682, a case decided June 20, 1974. This was a black schoolteacher-firing case that had been twice appealed to the Fifth Circuit. The district judge disallowed attorney fees at every stage, and the schoolteacher's counsel contended that Section 1617 authorized the award of counsel fees, retroactively to the commencement of the teacher litigation. That position was upheld. The Fifth Circuit made this comment about the *Bradley* case:

"The Supreme Court on May 15, 1974, expressly rejected this holding [*Johnson v. Combs,* 5 Cir., 471 F.2d 84] by concluding that the statute is applicable to litigation predating, *but pending on appeal on,* the effective date of the statute unless the award would cause 'manifest injustice.'" (Emphasis added)

In *Thompson,* the Fifth Circuit went on to say:

"Since the school board has failed to cite any special circumstances, and since it is undisputed that these proceedings were necessary to bring about compliance with the law, the district court, upon the entry of a final order in this case, is directed to grant appellants' request for reasonable attorney's fees for services rendered from the first district court hearing through this appeal."

At first glance, *Thompson* would appear to afford some comfort to plaintiffs' position. Yet, it is plain that *Thompson* was, like *Bradley,* continuing litigation and before the Court of Appeals twice for resolution, and thus was a case pending at the time of the passage of Section 1617. It is this aspect of the case which was dispositive of the issue.

Moving on, the Court next addresses the issue of whether there should be an allowance of attorney fees under a judicial standard wholly apart from the Act of Congress. We were mandated by the Fifth Circuit, in *Clarksdale IV,* to determine if the school board did act in an unreasonable and obdurately obstinate manner in the years preceding July 1, 1972, so as to entitle plaintiffs to an award of counsel fees. Of course, this standard continues as an exception to the general rule, as recently canvassed by the Supreme Court in the *Alyeska Pipeline* case, that litigants are not required to pay attorney fees incurred by adversary parties.

For services rendered prior to 1969, the Court has no difficulty whatever in concluding no allowance should be made. During that period the actions of the school board were free of any possible taint of obstinate non-compliance, and it would be most unjust and inequitable to assess the board with liability for legal services from 1964 to the Fifth Circuit's initial ruling in 1969. The Clarksdale case was the first desegregation suit filed in the Northern District of Mississippi; the board saw fit to adopt a unique attendance zone plan. According to the way defense counsel and many courts then understood the law to be, a zoning plan based upon compact, contiguous boundaries, irrespective of race, was not objectionable. Certainly, Clarksdale's plan was unusual, since most districts were resorting to freedom of choice in efforts to comply with *Brown's* mandate. The board's zoning plan was approved by District Judge Clayton after a full hearing. The case was admittedly one of legal difficulty, because it remained almost three

years before the Court of Appeals, and the Court of Appeals frankly conceded that it had been waiting for guidance before acting. Although the Supreme Court had no occasion to address the issue, many lower court decisions were to the effect that a benign attendance zone plan was constitutionally acceptable if devised without racial overtones or motivation. When the specific guidance from the Supreme Court was not forthcoming, the Fifth Circuit, influenced by *Green's* affirmative requirements for desegregation, decided to act in March 1969. As has been pointed out, the Fifth Circuit did not directly repudiate the Clarksdale plan, but sent the case back to the district court for re-examination in the light of changed law and the fact that the plan was not producing substantial student desegregation. Until that date, the school board had readily complied with all court orders, and its actions had been upheld, and its legal positions had been upheld.

Additionally, the Court finds there was no expectation by plaintiffs of compensation for legal services rendered in this early period of time by Professor Bell and his associates, that the Clarksdale case was merely one of many problems that the NAACP agency had in furthering a program of eliminating illegal segregation. There was no object in documenting the nature and extent of the legal services and no attempt made to record elements of time allocable to the Clarksdale school case. The estimates of time furnished to the Court have been constructed many years after the event, and are necessarily vague. We are not persuaded that at this late date there is a reliable factual basis for allowing counsel fees for services remotely rendered. Laches certainly operates to bar the resurrection of stale claims where many years have gone by and the law's demands in public school desegregation have materially changed.

With later changes in the law mandated by Supreme Court rulings, it would be inequitable to fasten upon this district, or any district, attorney fees incurred by the adversary parties for litigation in accordance with the principles as they were then understood by many courts and by many lawyers. Because of these considerations, it would be manifestly unjust to allow any sum for legal services asserted by Professor Bell. Should this Court be in error as to its interpretation of the Act of Congress and it does authorize retroactively an award to the beginning of the Clarksdale school litigation, then it is nevertheless our firm view that on the clear facts and the case records it would be improper to impose on this district liability for counsel fees in any amount whatever for the work done on behalf of plaintiffs prior to the 1969 remand by the Court of Appeals. Congress has indicated that district courts have a measure of discretion in this regard, for the statute says that the courts *may* allow the prevailing party reasonable attorney fees. The Act certainly does not say the court is required to allow fees despite the existence of cogent reasons why such should not be allowed. Hence, we feel very strongly that in the 1964–69 period it would be improper to assess the school board with plaintiffs' counsel fees.

That leaves one other aspect—whether apart from Section 1617 an allowance should be made for the valuable legal services rendered by Mr. Leventhal after the decision in *Clarksdale I* until July 1, 1972. In all candor, I find this to be a close factual issue. It should be said that this Court was disappointed at the board's failure to affirmatively address the issue of a new desegregation plan on remand and by endeavoring to adhere to a rejected position. That attitude exhibited by the board did thrust upon the Court a heavier burden in trying to resolve the Clarksdale school desegregation problems. Even so, several factors are present which incline this Court against a finding of unreasonable, obdurate obstinacy by the board. One factor is that, in the eyes of this Court, HEW's plan in material respects was not satisfactory, and the Court required the appointment of a special master to study the school system. The master's contributions were decidedly worthwhile as to the upper six grades, notwithstanding the reversal by the Fifth Circuit of the elementary grade school struc-

ture. The master's services cost the school board a fair sum of money, yet it was a direct consequence of the board's own failure to submit further plans. Nevertheless, when the master's plan was approved by the district court, the school board defended it on appeal, although losing as to the elementary grade structure.

From that point forward, the school board bowed to the inevitable, and recognized that new desegregation orders governed the Clarksdale schools. The litigation was vigorously contested, yet this does not mean that it was unnecessary or vexatious for the board not to yield without a fight.

Though the board's attorney appears to be unyielding in his personal view of what is required by the constitution in school cases, this is hardly an adequate basis for holding the board itself acted unreasonably or in an obdurately obstinate manner. On the contrary, everything considered, the evidence more fairly justifies the opposite conclusion: That though the suit was a bitter, hotly-contested school case, it was not conducted vexatiously or unnecessarily or in such censorious manner that the board should pay for plaintiffs' attorney fees which were incurred prior to July 1, 1972. That the case was difficult and perplexing cannot be denied, but this is no reason to charge the board with obstinate conduct. In answer to this aspect of the Fifth Circuit's directive, we find on the evidence, as well as on our records and files, that the school board, in the conduct of the litigation, did not act in an unreasonable and obdurately obstinate manner prior to July 1, 1972, and that it should not, for that reason, be required to pay for pre-July 1, 1972, legal expenses incurred by plaintiffs.

The Court further finds on the record that the reasonable attorney fees allowable from July 1, 1972, forward would be $1,500. This sum is based on the time Mr. Leventhal expended in the case in court, as well as investment of travel and conference time.

For appeal purposes only, I would further find that if an additional award is due for counsel services rendered prior to July 1, 1972, the amount would be fixed in the sum of $8,500. This finding is amply supported by the court hours, travel and conference time expended by Mr. Leventhal. His professional services were valuable to the case and are reasonably worth $8,500. We refrain, however, from making findings as to the nature, extent or value of any legal services rendered *prior* to the first decision of the Fifth Circuit Court of Appeals in *Henry v. Clarksdale Municipal Separate School District*, 409 F.2d 682, since, in our view, it would be manifestly inequitable under either Section 1617 or judicial principles to entertain such an allowance.

So, gentlemen, consistent with the foregoing, I will issue an order directing the school board to pay to plaintiffs' counsel the sum of $1,500 and denying further allowances. I have made detailed findings in the thought that if I have erred in the construction of Section 1617 or on my findings of lack of obdurate obstinacy on the part of the school board, the Court of Appeals will be in position to make such adjustment as it may deem proper.